DECISION AND JUDGMENT ENTRY {¶ 1} This is an appeal from a judgment of the Lucas County Court of Common Pleas that granted summary judgment in favor of appellee Mark I. Jacobs in this action involving appellants' claim of fraud. For the following reasons, the judgment of the trial court is affirmed.
 {¶ 2} Appellants set forth the following assignments of error: *Page 2 
 {¶ 3} "I. The trial court erred on September 1, 2006, in granting summary judgment to defendant, Mark Jacobs, on the ground that plaintiffs had released Mark Jacobs from liability in the cause based upon a settlement and release in another action to which Mark Jacobs was neither a signatory, nor a party.
 {¶ 4} "II. The trial court erred in its October 6, 2006 order denying plaintiffs' motion for reconsideration of its September 1, 2006 order.
 {¶ 5} "III. The trial court erred in determining that the case ofChiaverini, Inc., et al, v. Jacobs was included under the terms of the settlement agreement of August 23, 2005 in probate court case no. 2004 ADV 2374."
 {¶ 6} Over 20 years ago, Vito Chiaverini and his wife, Annette, purchased real property located on Monroe Street in Toledo, Ohio, where they operated Liberal Jewelers, Antiques and Violins ("the business"). In 1986, the business was incorporated as Chiaverini, Inc. In 1990, Annette's brother, Daniel Eget, loaned Vito and Annette $35,000; he later loaned them an additional $4,000.
 {¶ 7} In early 2001, appellee Mark Jacobs, as Annette and Vito's attorney, prepared several documents for the couple so that they could convey their interest in the Monroe Street real estate, the personal property associated with the business, and any shares they owned in the business to their son, appellant Jascha Chiaverini. Appellee prepared a bill of sale conveying the personal property associated with the business and the shares they owned in Chiaverini, Inc. to Jascha. Appellee also prepared a quit claim deed conveying their interest in the real estate to Chiaverini, Inc., whose sole shareholder *Page 3 
was Jascha. In addition, appellee prepared a $39,000 mortgage on the Monroe Street property from Vito and Annette to Eget and a document releasing the Chiaverinis from any and all claims their son might have against them at that time or in the future.
 {¶ 8} On March 20, 2001, appellee delivered the release and the bill of sale to Jascha, who signed the documents the following day. On March 21, 2001, appellee caused the mortgage and deed to be filed. The record reflects that the mortgage was filed one minute before the deed was recorded. Jascha did not learn of the existence of the mortgage until several months later.
 {¶ 9} On March 15, 2005, Jascha filed a complaint alleging that appellee fraudulently and by deception caused Jascha to sign the release in 2001. Plaintiffs in that action were Jascha and Chiaverini, Inc. (hereafter "appellant"). In the complaint, appellant alleged that appellee had represented to him that all right and title to the business, along with the quit claim deed, were being transferred to him in exchange for the release. Appellant alleged that he did not know about the mortgage on the property and that appellee knew he would not have signed the release had he known of appellee's intent to file a mortgage on the property prior to the deed. Appellant also alleged that appellee's act of fraud forced him to litigate the validity of the mortgage and caused him to incur attorney fees and costs as well as suffer mental and emotional distress.[1] *Page 4 
 {¶ 10} The record reflects that on August 23, 2005, appellant entered into a "Settlement Agreement and Mutual Release" in the Lucas County Court of Common Pleas, Probate Division, which resolved several cases involving various members of the Chiaverini family as well as their father's estate. Although the details of those cases are not contained in the record of the case before us, we do know that it was the discovery of the settlement agreement that led appellee to file a counterclaim against appellant in March 2006. In his counterclaim, appellee alleged abuse of process, asserting that the August 2005 settlement agreement released the fraud claim appellant had filed against him in March 2005. On June 30, 2006, appellee filed a motion for summary judgment in the trial court. The motion for summary judgment was granted on September 1, 2006, and appellant's claim was dismissed. Appellant now appeals that judgment.
 {¶ 11} Since appellant's first and third assignments of error both essentially assert that the trial court erred by granting appellee's motion for summary judgment, they will be addressed together. Appellant argues that his lawsuit against appellee was not affected by the August 2005 settlement in probate court.
 {¶ 12} An appellate court must employ a de novo standard of review of the trial court's summary judgment decision, applying the same standard used by the trial court. Lorain Natl. Bank v. Saratoga Apts. (1989), 61 Ohio App.3d 127, 129; Grafton v. Ohio Edison Co., 77 Ohio St. 3d 102,105, 1996-Ohio-336. Summary judgment will be granted when there remains no genuine issue of material fact and, when construing the *Page 5 
evidence most strongly in favor of the nonmoving party, reasonable minds can only conclude that the moving party is entitled to judgment as a matter of law. Civ.R. 56(C).
 {¶ 13} From the limited information contained in the record before this court, it appears that the 2005 settlement agreement was entered into as a means of resolving several actions in probate court involving appellant, his sisters and the estate of their father, Vito Chiaverini. Although the record of proceedings in the probate court is not a part of the record in this case, the August 2005 settlement agreement ("the release") that gave rise to appellee's counterclaim is, since it was made an attachment to appellee's motion for summary judgment.
 {¶ 14} Relevant portions of the release signed by appellant are as follows:
 {¶ 15} "WHEREAS, the parties have initiated several civil actions between and amongst themselves, specifically case no. [* * *], as well as other cases not herein referenced, and
 {¶ 16} "WHEREAS, all parties involved, in the estate and the various lawsuits between them have agreed to fully and completely resolve their differences and now wish to reduce to writing their understandings of the terms as set forth in this Agreement.
 {¶ 17} "NOW, THEREFORE, in consideration of the mutual covenants and agreements contained herein and for other good and valuable consideration, the receipt and adequacy of which is hereby acknowledged, the parties, intending to be legally bound, agree to the following settlement conditions:
 {¶ 18} "* * * *Page 6 
 {¶ 19} "8. each party will dismiss with prejudice all pending litigation between and among them with each party to bear his, her or its own costs, including attorneys fees, and
 {¶ 20} "9. each part [sic] does hereby RELEASE AND FOREVER DISCHARGE each and every other party to this agreement, with the exception set forth in provision numbers 5 and 6, and that party's heirs, executors, assigns, administrators, trustees, successors and attorneys from any and all debts, claims, demands, injuries to person or property,actions and causes of actions whatsoever, of any kind, nature ordescription, which any party has or may have against any other partyfrom the beginning of time until the date of this agreement. (Emphasis added.)
 {¶ 21} "Each party hereto enters into this Settlement Agreement and Release knowingly, voluntarily and on the advice of his, her or its counsel. There has been no other inducement to enter into this Settlement Agreement and Release, and it may not be modified in any way except in writing signed by all the parties hereto."
 {¶ 22} The interpretation of a written contract is a matter of law for the court. Alexander v. Buckeye Pipe Line Co. (1978), 53 Ohio St.2d 241, paragraph one of the syllabus. There is a presumption that the intent of the parties is contained in the language of the contract. Kelly v. Med.Life Ins. Co. (1987), 31 Ohio St.3d 130, paragraph one of the syllabus. Further, when the contract language is clear, the court will apply the ordinary meaning of the words used in the contract unless manifest absurdity results, or *Page 7 
unless some other meaning is clearly evidenced from the face or overall contents of the instrument. Alexander, supra, at paragraph two of the syllabus.
 {¶ 23} In this case, the clear and unambiguous language of the release must be given effect. Clearly, the agreement releases appellant's right to pursue any claims or causes of action against appellee. It is undisputed that appellee was Vito Chiaverini's attorney and that Vito's estate was a party to the release. Accordingly, pursuant to paragraph nine of the release, appellant agreed to dismiss his pending litigation against appellee.
 {¶ 24} We further note that appellant argued in the trial court, and continues to assert on appeal, that the release was modified orally at the hearing so as to omit the case before us. However, as set forth above, the release by its specific terms stated that "it may not be modified in any way except in writing signed by all the parties hereto." We note that there were two additions to the release, handwritten and initialed, which have no relevance to the issue raised on appeal. There is no evidence that the release was amended in writing so as to omit the instant case from the dismissal.
 {¶ 25} Based on the foregoing, we find that reasonable minds can only conclude that appellee was entitled to judgment as a matter of law and, accordingly, appellant's first and third assignments of error are not well-taken.
 {¶ 26} As his second assignment of error, appellant states that the trial court erred by denying his motion for reconsideration. It is well-established that the Ohio Rules of Civil Procedure do not provide for motions for reconsideration in the trial court and that *Page 8 
such motions are considered a nullity. Pitts v. Ohio Dept. ofTransp. (1981), 67 Ohio St.2d 378, 380. Accordingly, appellant's second assignment of error is not well-taken.
 {¶ 27} On consideration whereof, this court finds that substantial justice was done the party complaining and the judgment of the Lucas County Court of Common Pleas is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Lucas County.
 JUDGMENT AFFIRMED. *Page 9 
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4.
Mark L. Pietrykowski, P.J. JUDGE
Arlene Singer, J. JUDGE
Thomas J. Osowik, J. JUDGE
CONCUR.
[1] Appellant subsequently testified at deposition that as a result of a lawsuit he brought against his uncle challenging the mortgage, Eget released the mortgage and paid appellant $20,000. *Page 1