[Cite as *3637 Green Rd. Co., Ltd. v. Specialized Component Sales Co., Inc.*, 2016-Ohio-5324.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 103599**

# 3637 GREEN ROAD CO., LTD.

PLAINTIFF-APPELLANT

vs.

# SPECIALIZED COMPONENT SALES CO., INC.

DEFENDANT-APPELLEE

**JUDGMENT:**
AFFIRMED

Civil Appeal from the
Shaker Heights Municipal Court
Case No. 14-CVG-01063

**BEFORE:** E.A. Gallagher, P.J., E.T. Gallagher, J., and Celebrezze, J.

**RELEASED AND JOURNALIZED:** August 11, 2016

**ATTORNEYS FOR APPELLANT**

Lewis A. Zipkin
In Son J. Loving
Zipkin Whiting Co., L.P.A.
The Zipkin Whiting Building
3637 South Green Road
Beachwood, Ohio 44122


**ATTORNEY FOR APPELLEE**

Frank P. Giaimo
24400 Chagrin Blvd., Suite 300
Beachwood, Ohio 44122

EILEEN A. GALLAGHER, P.J.:

**{¶1}** Plaintiff-appellant 3637 Green Road Co., Ltd. ("3637 Green Road") appeals from a judgment of the Shaker Heights Municipal Court in its favor and against defendant-appellee Specialized Component Sales Co., Inc. ("Specialized Component Sales") for breach of a commercial lease. 3637 Green Road contends that the trial court erred (1) in enforcing an alleged oral modification of the lease that reduced the monthly rent, (2) in concluding that Specialized Component Sales was liable only for rent through December 2012 and (3) in offsetting rent due for November and December 2012 by Specialized Component Sales' security deposit. 3637 Green Road asserts that instead of the $1,196.50 in damages it was awarded by the trial court, it should have been awarded the court's jurisdictional limit of $15,000 in damages. For the reasons that follow, we affirm the trial court's judgment.

**Factual Background and Procedural History**

**{¶2}** On September 22, 2014, 3637 Green Road filed a complaint in the Shaker Heights Municipal Court against Specialized Component Sales, seeking $7,368.75 in damages plus statutory interest and costs as a result of its alleged breach of a month-to-month commercial lease with 3637 Green Road. 3637 Green Road alleged that Specialized Component Sales "willfully and/or negligently" breached its obligations under the lease to pay monthly rent and to "refrain from damaging the premises in excess of ordinary wear and tear." Attached to the complaint was a statement of account (the

"statement of account") showing that monthly rent of $1,473.75 had been invoiced from January 1, 2011 through March 1, 2013 but had not been paid from November 2012 through March 2013, totaling $7,368.75.

{¶3} In its answer, Specialized Component Sales admitted that the parties had a month-to-month lease for the premises but denied that it owed 3637 Green Road any amount under the lease. It maintained that 3637 Green Road's claims were barred by setoff based on 3637 Green Road's retention of Specialized Component Sales's security deposit and rent 3637 Green Road received from subsequent tenants of the premises. A bench trial was held on August 15, 2015. Lewis Zipkin, the then-sole remaining partner of 3637 Green Road, Flo Goldkrantz, Zipkin's secretary and receptionist and Steve Sulzberger, principal of Specialized Component Sales, testified at trial. A summary of the relevant evidence follows.

{¶4} On April 17, 1981, 3637 Green Road and Specialized Component Sales, a distributor of industrial electrical components, entered into a lease for warehouse and office space (suites 2B and 3A) in the Green Park Building on 3637 Green Road in Beachwood (the "original lease"). Suite 2B was warehouse space and suite 3A was office and warehouse space (collectively, the "premises"). The original lease was for a term of three years, beginning on June 1, 1981 and terminating on May 31, 1984, at a monthly rent of $1,600, with an option to renew the lease for another three-year term at a monthly rent of $1,882. Paragraph 23 of the original lease, entitled "holding over," states:

Should the Lessee remain in possession of the leased premises after the date of the expiration of this Lease, Lessee shall be a tenant from month to month, and such tenancy shall be otherwise subject to all the conditions and covenants of this Lease.

Paragraph 22 of the original lease, entitled "vacation of premises," states:

Lessee shall deliver up and surrender to Lessor possession of the leased premises upon the expiration of the Lease or its termination in any way in as good condition and repair as the same shall be at the commencement of said term * * * and deliver the keys at the office of Lessor or Lessor's agent.

{¶5} The original lease also contained a written waiver provision and a no-oral-modification provision. Paragraph 24 of the original lease, the written waiver provision, states, in relevant part:

No waiver of any condition or legal right or remedy shall be implied by the failure of Lessor to declare a forfeiture, or for any other reason, and no waiver of any condition or covenant shall be valid unless it be in writing signed by Lessor. * * *

Paragraph 42 of the original lease, which includes the no-oral-modification provision, states, in relevant part:

This Lease contains the entire agreement between the parties, and any other agreement hereafter made shall be ineffective to change, modify or discharge it in whole or in part unless in writing and signed by the party against whom enforcement of the change, modification or discharge is sought. * * *

Specialized Component Sales stipulated that the original lease required that any modification to the lease be in writing.

{¶6} The parties executed six written extensions to the original lease. After the expiration of the final written lease extension, Specialized Component Sales remained in

possession of the premises. The parties agree that from the expiration of the sixth lease extension until October 31, 2012, Specialized Component Services was a month-to-month tenant; however, the parties dispute the amount of the monthly rent that was owed during the tenancy and when the lease terminated.

{¶7} The base monthly rent under the fifth lease extension, commencing January 1, 1998, was $1,737 for the first 17 months and $1,824 for the remaining 24 months, with the possibility of additional rent payments based on "real estate tax escalation" and "operating expense escalation" provisions. Because it had been unable to locate a copy of the sixth lease extension (which 3637 Green Road claims specified a higher rent)[1] until shortly before trial, 3637 Green Road's claims for unpaid rent were based on the rent specified in the fifth lease extension. Thus, 3637 Green Road argued, based on the fifth lease extension, that it was entitled to monthly rent of $1,824 for the entirety of Specialized Component Sales' month-to-month tenancy. Steve Sulzberger, principal of Specialized Component Sales, acknowledged that under the last written extension of the lease the rent was "something in the $1,800 range." However, he testified that at "roughly the end of 2003" or the beginning of 2004, he "had a discussion" with Nelson Barman, 3637 Green Road's property manager, "about business being fairly bad at the time" and the fact that he would have to find another, cheaper place to rent unless 3637 Green Road agreed to reduce the rent on the premises. Sulzberger testified that, as a

---

[1] The sixth lease extension, although referenced at the trial, was not included in the record on appeal. Therefore, it is unknown whether any other modifications to the original lease, relevant to the issues here, were agreed to in that lease extension.

result of their discussion, the monthly rent was reduced to $1,473.75 but that no written agreement was executed confirming the rent reduction.

{¶8} Sulzberger stated that Specialized Component Sales paid the reduced monthly rent of $1,473.75 from "roughly 2004" until October 2012. During that time period, he never received any communications from 3637 Green Road suggesting that Specialized Component Sales had not paid sufficient rent or that it owed the balance between the $1,473.75 it had paid each month and the monthly rent agreed to in the fifth lease extension (or any other written lease extension). He further testified that when Specialized Component Sales made its final rent payment on October 17, 2012 (for the rent due October 1, 2012), it was his understanding, consistent with the statement of account attached to the complaint, that there was a zero balance due under the lease as of that date.

{¶9} The fifth lease extension also addressed the security deposit Specialized Component Sales was required to provide under the lease, stating in relevant part:

> Upon the execution of this Fifth Extension of Lease, Lessee agrees to deposit and maintain with Lessor the sum of Seventeen Hundred Thirty-seven dollars ($1,737.00) which means that an additional Fourteen dollars ($14.00) shall be added to the security deposit currently on deposit, to be held without interest to secure the faithful performance of all of the covenants of the Lease and if the same have been faithfully performed, said deposit shall be refunded at the expiration of this Lease. * * * [2]

[2]The fifth lease extension further provides that "[e]ach time the rent for the Premises is increased * * *, the security deposit shall be increased so as to equal a one month installment." This provision would have required Specialized Component Sales to increase its security deposit once the base monthly rent under the fifth lease extension was increased to $1,824. However, as there has been no claim that the trial court erred in calculating the security deposit at $1,751 rather than $1,824, we do not further address that issue here.

{¶10} Sulzberger testified that it was his belief that Specialized Component Sales had paid the security deposit required under the fifth lease extension but that because it was so long ago, he either did not have or could not locate, copies of checks or other documents confirming that the security deposit had been paid. He testified that he had never received any notice that any part of the security deposit had been applied to rent or any other expense. 3637 Green Road offered no evidence that the security deposit had not been paid or that unpaid rent or any other expense had been previously offset against the security deposit.

{¶11} In September 2012, Zipkin, the then-sole remaining partner of 3637 Green Road,[3] told Sulzberger that Specialized Component Sales needed to vacate suite 2B by October 31 or pay an additional $1,800 a month in rent, i.e., $1,800 a month in addition to the rent it was currently paying for that space and suite 3A, because 3637 Green Road had located a new tenant for suite 2B. Zipkin informed Sulzberger that Specialized Component Sales could continue leasing suite 3A but that there would be no reduction in rent notwithstanding the reduction in space. Sulzberger testified that he rejected Zipkin's offer to continuing renting suite 3A at the same rent and that Specialized Component Sales began taking steps to vacate the premises. 3637 Green Road did not provide any written notice to Specialized Component Sales of its termination of the month-to-month lease.

---

[3]Zipkin testified that he became the sole partner for 3637 Green Road in January 2011.

{¶12} On October 30, 2012, 3637 Green Road executed a lease with the Beard Group for suite 2B for a monthly base rent of $1,800. The lease term was to begin on November 1, 2012 or upon receipt of the occupancy certificate. Zipkin testified that the occupancy certificate was received and that the Beard Group began paying rent for suite 2B on January 7, 2013.

{¶13} Specialized Component Sales vacated the premises on Thanksgiving weekend in 2012. On December 3, 2012, Sulzberger went to Zipkin's office and handed the keys for the premises to Flo Goldkrantz, Zipkin's secretary and receptionist. Sulzberger testified that he told Goldkrantz "here are the keys for [Specialized Component Sales]" and that he "probably said something else * * * to the [e]ffect that I would not be needing these anymore" but was not certain exactly what he told her. Goldkrantz testified that she did not "recall [Sulzberger] specifically" but did recall a man handing her a set of keys on December 3, 2012 and stating that they were for Specialized Component Sales. She did not recall "any other conversation being had." She testified that when she received the keys from Specialized Component Sales, she placed them in an envelope marked Specialized Component Sales and told the controller or property manager that she had received the keys for that space.

{¶14} Although 3637 Green Road had not received any rent from Specialized Component Sales since October 2012 and Specialized Component Sales had turned in its keys to 3637 Green Road in December 2012, Zipkin claimed that he did not learn that Specialized Component Sales had vacated the premises until sometime in March 2013

when a pipe burst in suite 3A. When the property manager or another member of his staff went into the premises to make repairs, he or she discovered that Specialized Component Sales was no longer occupying the premises.

{¶15} Zipkin claimed that Specialized Component Sales left suite 3A in a "rather messy" condition, "loaded and stacked with furniture, filing cabinets, desks, parts and pieces of electrical type stuff * * * just jammed packed" and introduced several photographs of the property allegedly left behind into evidence. Sulzberger acknowledged that "probably half" of the property depicted in the photographs had been left behind by Specialized Component Sales. 3637 Green Road offered no evidence of any costs or expenses (or estimated costs or expenses) associated with the removal of the property left behind by Specialized Component Sales. When asked whether 3637 Green Road was asserting a claim with respect to that property, Zipkin replied, "[i]t would be above and beyond the court's jurisdictional limit."

{¶16} At trial, 3637 Green Road argued that it was entitled to recover (1) the difference between the $1,824 monthly rent specified in the fifth lease extension and the $1,473.75 month rent paid by Specialized Component Sales from January 1, 2011 through October 17, 2012 and (2) $1,824 in monthly rent for November 2012 through March 2013. Because these sums exceeded the court's $15,000 jurisdictional limit, 3637 Green Road requested that it be awarded $15,000 in damages. In response, Specialized Component Sales asserted that it had paid all the rent due through October 2012 and that

because its security deposit exceeded the $1,473.75 monthly rent, the security deposit covered the November 2012 rent.

**{¶17}** On August 28, 2015, the trial court issued a judgment entry awarding 3637 Green Road $1,196.50 in damages plus interest and costs on its complaint. The trial court found that the parties had orally agreed to reduce the monthly rent due under the lease to $1,473.75, that 3637 Green Road had terminated the month-to-month tenancy as of October 31, 2012 and that Specialized Component Sales vacated the premises on December 3, 2012 when it turned in the keys for the premises. Based on these findings, the court concluded that Specialized Component Sales owed rent for the months of November and December 2012 (totaling $2,947.50) which, when offset by its $1,751 security deposit, resulted in a net damages award of $1,196.50 to 3637 Green Road.

**{¶18}** 3637 Green Road appealed, raising the following four assignments of error for review:

> First Assignment of Error:
> The trial court erred in finding in favor of defendant-appellee that the parties, through their actions, entered into a verbal modification of the written lease amount.
>
> Second Assignment of Error:
> The trial court erred to the prejudice in favor of defendant-appellee that defendant-appellee was not required to provide plaintiff-appellant with a 30-day notice prior to vacating the premises.
>
> Third Assignment of Error:
> The trial court erred in finding in favor of defendant-appellee that plaintiff-appellant terminated the entire lease agreement.
>
> Fourth Assignment of Error:
> The trial court erred in admitting hearsay evidence at trial.

**Law and Analysis**

**Standard of Review**

**{¶19}** In a civil appeal from a bench trial, we apply a manifest weight standard of review, guided by a presumption that the trial court's findings are correct. *Seasons Coal v. Cleveland*, 10 Ohio St.3d 77, 79-80, 461 N.E.2d 1273 (1984). A judgment supported by some competent, credible evidence going to all the material elements of the case will not be reversed as being against the manifest weight of the evidence. *C.E. Morris Co. v. Foley Constr. Co.*, 54 Ohio St.2d 279, 376 N.E.2d 578 (1978), syllabus. Where, however, the trial court's decision is based upon a question of law, we review the trial court's determination of that issue de novo. *See, e.g., Taylor Bldg. Corp. of Am. v. Benfield,* 117 Ohio St.3d 352, 2008-Ohio-938, 884 N.E.2d 12, ¶ 34 ("Courts review questions of law de novo."). "A finding of an error of law is a legitimate ground for reversal, but a difference of opinion on credibility of witnesses and evidence is not." *Seasons Coal* at 81.

**Trial Court's Determination that Oral Modification of Lease Was Enforceable**

**{¶20}** In its first assignment of error, 3637 Green Road claims that the trial court erred in concluding that there was an enforceable oral agreement to modify the rent due under the lease because: (1) the lease expressly prohibited any oral modification of its

terms; (2) there was no consideration for the oral modification of the lease and (3) oral modification of the lease was barred by the statute of frauds.[4]

**Lease Provision Prohibiting Oral Modification of Lease**

{¶21} 3637 Green Road first argues that paragraph 42 of the lease (the no-oral-modification provision) precluded enforcement of the parties' oral agreement to reduce the rent due under the lease and that paragraph 24 of the lease (the written waiver provision) "eviscerates any argument that [3637 Green Rd.] acceptance of partial rent waives [its] right to discount oral modifications."

{¶22} Where, as here, a party claims that a written contract was "orally modified despite the presence of a 'no oral modification' clause," that party "is also implicitly asserting that the clause itself was orally waived." *Wells Fargo Bank v. Smith*, 11th Dist. Trumbull No. 2010-T-0051, 2012-Ohio-1672, ¶ 35. The purpose of a no-oral-modification provision is "to protect a party against fraudulent or mistaken oral testimony regarding the alleged existence of an oral modification." *Id.* at ¶ 46. However, no-oral-modification and written waiver provisions, like any other contractual

---

[4]Although throughout its brief, 3637 Green Road refers to the "alleged oral agreement" to reduce the base monthly rent; on appeal, it does not argue that the trial court's finding that the parties, in fact, orally agreed to reduce the rent due under the lease was against the manifest weight of the evidence. Rather, it contends that the parties' oral agreement to modify the lease was unenforceable as a matter of law based on the lease's no-oral-modification and written waiver provisions, the alleged lack of consideration for the lease modification and the statute of frauds. Even if 3637 Green Road had challenged the trial court's finding that the parties had orally agreed to a rent reduction, we would conclude, for the reasons set forth herein, that the trial court's finding was supported by ample competent, credible evidence.

provision, can be waived by the parties. *See, e.g., Snowville Subdivision v. Home S. & L.*, 8th Dist. Cuyahoga No. 96675, 2012-Ohio-1342, ¶ 15-17; *Home S&L of Youngstown v. Snowville Subdivision Joint Venture*, 8th Dist. Cuyahoga No. 97985, 2012-Ohio-4594, ¶ 29-31; *see also Vivi Retail, Inc. v. E&A N.E. L.P.*, 8th Dist. Cuyahoga No. 90527, 2008-Ohio-4705, ¶ 30 ("If the language of a lease is clear and unambiguous, courts must enforce the instrument as written. * * * However, waiver of a contract term can occur when a party conducts itself in a manner inconsistent with an intention to insist on that term."); *Star Leasing Co. v. G&S Metal Consultants, Inc.*, 10th Dist. Franklin No. 08AP-713, 2009-Ohio-1269, ¶ 25 (acknowledging "the disfavor that courts have traditionally afforded no oral-modification clauses in written contracts and the resulting principle that a no-oral-modification clause can be waived by oral agreement like any other term in a contract"); *Fahlgren & Swink, Inc. v. Impact Resources, Inc.*, 10th Dist. Franklin No. 92AP-303, 1992 Ohio App. LEXIS 6766, *11-12 (Dec. 24, 1992) ("Despite principles of freedom of contract and the potential benefit of avoiding false claims, the no-oral-modification clause has not garnered favor in the law. * * * '[W]henever two men contract, no limitation self-imposed can destroy their power to contract again.' * * * Accordingly, it has been held that the clause itself can be waived by oral agreement like any other term in a contract."), quoting *Beatty v. Guggenheim Exploration Co.*, 225 N.Y. 380, 122 N.E. 378 (1919); *Wells Fargo* at ¶ 35 (noting that "Ohio appellate courts have generally held that an oral waiver of a 'non-oral modification' clause is legally

permissible when certain circumstances exist"). As this court explained in *Snowville Subdivision*:

> [W]ritten waiver provisions are valid and enforceable in Ohio. "Ohio law is very clear that a contract that expressly provides that it may not be amended, modified, or waived except in writing executed by the parties is not subject to oral modification." *Kelley v. Ferraro*, 188 Ohio App.3d 734, 2010-Ohio-2771, 936 N.E.2d 986, ¶ 39 (8th Dist.), citing *Freeman-McCown v. Cuyahoga Metro. Hous. Auth.*, 8th Dist. Cuyahoga Nos. 77182 and 77380, 2000 Ohio App. LEXIS 4989 (Oct. 26, 2000); *Rosepark Properties, Ltd. v. Buess*, 167 Ohio App.3d 366, 2006-Ohio-3109, 855 N.E.2d 140, ¶ 38 (10th Dist.); *Chiaverini, Inc. v. Jacobs*, 6th Dist. No. L-06-1360, 2007-Ohio-2394, ¶ 24; *Fultz & Thatcher v. Burrows Group Corp.*, 12th Dist. No. CA2005-11-126, 2006-Ohio-7041, ¶ 17.
>
> However, even with such a written waiver provision, [a party], through its actions, may waive a requirement under the agreement. Discussing no-oral modification clauses, the Twelfth District reasoned,
>
>> if such clauses are rigidly enforced, then a party could simply insert the clause into an agreement and would be magically protected in the future no matter what that party said or did. More simply, by including a no-oral-modification clause in a contract, a party could orally induce the opposing party in any way and then hide behind the clause as a defense. (Internal citations omitted.) *Fields Excavating, Inc. v. McWane, Inc.*, 12th Dist. No. CA2008-12-114, 2009-Ohio-5925, ¶ 17, citing *Beatty v. Guggenheim Exploration Co.*, 225 N.Y. 380, 381, 122 N.E. 378 (1919). * * *
>
> The waiver must be clear and unequivocal if it contradicts a written contract provision. If it is, a written waiver provision, just like any other provision in a contract, can be waived by actions of the parties. *Glenmoore Builders, Inc. v. Smith Family Trust*, 9th Dist. No. 24299, 2009-Ohio-3174, ¶ 41.

*Snowville Subdivision,* 2012-Ohio-1342, at ¶ 14-15.

{¶23} In *EAC Properties, LLC v. Brightwell*, 10th Dist. Franklin No. 10AP-853, 2011-Ohio-2373, the Tenth District explained waiver as it applies to contracts as follows:

As applied to contracts, waiver is a voluntary relinquishment of a known right. *State ex rel. Wallace v. State Med. Bd. of Ohio*, 89 Ohio St.3d 431, 435, 732 N.E.2d 960, 2000-Ohio-213. "Waiver assumes one has an opportunity to choose between either relinquishing or enforcing of the right." *Chubb v. Ohio Bur. of Workers' Comp.*, 81 Ohio St.3d 275, 279, 1998-Ohio-628, 690 N.E.2d 1267. A party who has a duty to perform and who changes its position as a result of the waiver may enforce the waiver. *Id.* at 279, 690 N.E.2d 1267, citing *Andrews v. State Teachers Retirement Sys.*, 62 Ohio St.2d 202, 205, 404 N.E.2d 747 (1980). The party asserting waiver must prove the waiving party's clear, unequivocal, decisive act. *Automated Solutions Corp. v. Paragon Data Sys., Inc.*, 167 Ohio App.3d 685, 856 N.E.2d 1008, 2006-Ohio-3492, ¶ 28 (8th Dist.).

"[W]aiver of a contract provision may be express or implied." *Lewis & Michael Moving & Storage, Inc. v. Stofcheck Ambulance Serv., Inc.*, 10th Dist. Franklin No. 05AP[-]662, 2006-Ohio-3810, ¶ 29, quoting *Natl. City Bank v. Rini*, 162 Ohio App.3d 662, 834 N.E.2d 836, 2005-Ohio-4041, ¶ 24, citing *Griffith v. Linton*, 130 Ohio App.3d 746, 751, 721 N.E.2d 146 (1998). "'[W]aiver by estoppel' exists when the acts and conduct of a party are inconsistent with an intent to claim a right, and have been such as to mislead the other party to his prejudice and thereby estop the party having the right from insisting upon it." (Emphasis omitted.) *Id.*, quoting *Natl. City Bank* at ¶ 24 * * *. "Waiver by estoppel allows a party's inconsistent conduct, rather than a party's intent, to establish a waiver of rights." *Id.*, quoting *Natl. City Bank* at ¶ 24.

*Id.* at ¶ 21-23; *see also Automated Solutions Corp. v. Paragon Data Sys.*, 167 Ohio App.3d 685, 2006-Ohio-3492, 856 N.E.2d 1008, ¶ 28 (8th Dist.); *Galaxy Dev. v. Quadax, Inc.*, 8th Dist. Cuyahoga No. 76769, 2000 Ohio App. LEXIS 4651, *8-9 (Oct. 5, 2000). The issue of whether a no-oral-modification clause or a written waiver clause has been waived by a parties' actions is a question of fact. *Fields Excavating, Inc. v. McWane, Inc.*, 12th Dist. Clermont No. CA2008-12-114, 2009-Ohio-5925, ¶ 21.

{¶24} In this case, there is substantial, competent credible evidence in the record to support the conclusion that 3637 Green Road waived the lease's no-oral-modification and

written waiver provisions by its subsequent course of conduct acknowledging the rent reduction. Sulzberger testified that following his 2003 or 2004 discussion with Barman regarding its need for a rent reduction, Specialized Component Sales continued as a month-to-month tenant and paid a reduced monthly rent of $1,473.75 without objection by 3637 Green Road for the next eight or nine years. 3637 Green Road offered no evidence contradicting this testimony. Further, 3637 Green Road's own records demonstrate it treated the oral modification of the lease as operative. The statement of account 3637 Green Road attached to its complaint shows that from at least January 2011 to October 2012, 3637 Green Road "invoiced" monthly rent of $1,473.75 to Specialized Component Sales and Specialized Component Sales "paid" monthly rent of $1,473.75 to 3637 Green Road. After each monthly payment of $1,473.75 was made, the statement of account shows a zero balance owed on the account. There was no evidence that 3637 Green Road ever notified Specialized Component Sales of any delinquency in rent payments or, until the filing of this action, ever claimed that the no oral modification provision or written waiver provision precluded the enforcement of the parties' oral agreement to reduce the rent. *See, e.g., EAC Props.*, 2011-Ohio-2373 at ¶ 16-29 (trial court did not err in finding waiver, despite no-oral-modification and anti-waiver provisions, where plaintiff accepted lesser rent payment for 13 consecutive months without objecting and admitted in letter that it had not been charging defendant increased holdover rent); *see also Kwikcolor Sand v. Fairmount Minerals Ltd.*, 8th Dist. Cuyahoga No. 96717, 2011-Ohio-6646, ¶ 17-22 (where plaintiff waived, through its course of

performance, the no-oral-modification provision, the pricing terms of the agreement were modified and the parties were contractually bound to the modified pricing structure for the duration of the agreement or until further agreement to modify the terms of the agreement).

{¶25} Given the evidence in the record that the parties clearly, unequivocally and decisively acted upon their oral agreement to reduce the rent due under the lease and the resulting injury to Specialized Component Sales if their agreement was not enforced, the lease's no-oral-modification provision and written waiver provisions did not preclude the trial court from enforcing the parties' oral modification of the lease.

**Alleged Lack of Consideration for Modification**

{¶26} We next address 3637 Green Road's contention that the parties' oral agreement to reduce the rent did not result in a "valid modification to the lease agreement" because there was no new and distinct consideration for the rent reduction.

{¶27} As this court has stated, "[o]ral agreements to modify a prior written agreement are binding if based upon new and separate legal consideration or, even if gratuitous, are so acted upon by the parties that a refusal to enforce the oral modifications would result in fraud to the promisee." *Corsaro v. ARC Westlake Village, Inc.*, 8th Dist. Cuyahoga No. 84858, 2005-Ohio-1982, ¶ 16; *see also Wilhelmy v. 15201 Detroit Corp.*, 8th Dist. Cuyahoga No. 71290, 1997 Ohio App. LEXIS 2442, *10 (June 5, 1997); *Thurston v. Ludwig*, 6 Ohio St. 1 (1856), syllabus. The burden of proving consideration for an oral modification lies with the party seeking to establish the modification. *See,*

*e.g., Apex Sales Agency, Inc. v. Mather Co.,* 8th Dist. Cuyahoga No. 60344, 1992 Ohio App. LEXIS 5944, *10 (Nov. 19, 1992); *Hare v. Endersby*, 3d Dist. Allen Nos. 1-15-46, 1-15-47, 2015-Ohio-5442, ¶ 45; *Baker & Hostetler, LLP v. Delay*, 10th Dist. Franklin No. 08AP-1007, 2009-Ohio-2507, ¶ 19. Whether consideration exists for a modification is a question of fact. *Coldwell Banker Residential Real Estate Servs. v. Sophista Homes, Inc.*, 2d Dist. Montgomery No. CA-13191, 1992 Ohio App. LEXIS 5474, *7 (Oct. 26, 1992).

{¶28} In this case, prior to the parties' oral agreement to reduce the rent due under lease, Specialized Component Sales was contractually obligated, as a month-to-month tenant, to pay the rent specified in the sixth lease extension. It was not, however, contractually obligated to continue leasing the premises as a month-to-month tenant (or for any other term of tenancy). As detailed above, Sulzberger testified that due to a downturn in its business, Specialized Component Sales could no longer afford the rent on the premises and informed Barman in late 2003 or early 2004 that Specialized Component Sales would have to terminate its month-to-month tenancy and find another, cheaper place to rent unless 3637 Green Road would agree to reduce the monthly rent. Sulzberger further testified that, as a result of their discussion, the monthly rent was reduced to $1,473.75 and Specialized Component Sales continued to occupy the premises, paying the reduced monthly rent, for at least another eight years. Under the particular facts and circumstances here, the trial court could have reasonably concluded that Specialized Component Sales' continued leasing of the premises constituted

sufficient "new and separate consideration" for the rent reduction. *See, e.g., Ayres v. Burnett*, 2d Dist. Clark No. 2013-CA-88, 2014-Ohio-4404, ¶ 16-19 (where, after initial three-lease term, defendants became tenants at will, holding over under the lease, and parties orally agreed that defendants would pay less rent than rent due under lease, "modification was supported by sufficient consideration, in that [defendants] continued in possession of the premises, enabling [plaintiffs] to continue to earn income, after the expiration of the original lease term").

{¶29} Furthermore, even if Specialized Component Sales' continued leasing of the premises did not constitute adequate consideration for the lease modification, there is sufficient competent, credible evidence in the record to support a finding that the oral agreement had been "so acted upon by the parties that a refusal to enforce the oral modifications would result in fraud to the promisee." As detailed above, the record reflects that from at least January 2011 until October 31, 2012 — and, if Sulzberger's testimony is credited, for perhaps as many as eight years or more — the parties acted as if the monthly rent due under the lease was $1,473.75. If 3637 Green Road were now permitted to disclaim its oral agreement and recover the difference between the reduced rent it had orally agreed to accept (and, in fact, accepted without objection for more than 21 months) and the amount originally due under the lease, it would result in substantial harm to Specialized Component Sales, who, in reliance on the rent reduction, continued to occupy the premises as a month-to-month tenant. Thus, the parties' oral agreement to modify the lease was not unenforceable due to lack of consideration. *See, e.g., Moats v.*

*Howard*, 3d Dist. Allen No. 1-13-33, 2013-Ohio-5656, ¶ 26 (trial court did not err in finding that agreement was modified "despite the apparent lack of consideration" where parties did not dispute that agreement was modified and acted under modified agreement for several years); *Wilhelmy* at *10-11 (where plaintiff and defendant agreed that loan payments would cease because defendant was providing extensive support to plaintiff, the parties acted in reliance on the arrangement for several years and plaintiff undertook no efforts to collect loan payments until shortly before her death, modification enforced because "it would work a fraud upon defendant to refuse to enforce the modification").

**Statute of Frauds**

{¶30} As to 3637 Green Road's argument that the parties' oral agreement to reduce the rent was barred by the statute of frauds, we find that the doctrine of partial performance removes the oral agreement from the statute of frauds.

{¶31} R.C. 1335.04 provides:

No lease, estate, or interest, either of freehold or term of years, or any uncertain interest of, in, or out of lands, tenements, or hereditaments, shall be assigned or granted except by deed, or note in writing, signed by the party assigning or granting it, or his agent thereunto lawfully authorized, by writing, or by act and operation of law.

{¶32} A modification or reduction of the rent stated in a written lease cannot generally be proven by evidence of an oral agreement based on the statute of frauds. *See, e.g., Miami Valley United Methodist Mission Soc. v. White-Dawson*, 2d Dist.

Montgomery No. 17873, 2000 Ohio App. LEXIS 740, *5 (Mar. 3, 2000) (oral agreement that modified provision of written lease concerning the form of rent to be paid and the landlord's right to receive it was ineffective to vary the rent provisions of the written lease), citing *Am. Jewelry Co. v. Barrs Self-Driver Co., Inc.,* 48 Ohio App. 239, 192 N.E. 865 (1st Dist.1933).

{¶33} However, partial performance is an exception to the statute of frauds. *See, e.g., Saber Healthcare Group, LLC v. Starkey*, 6th Dist. Huron No. H-09-022, 2010-Ohio-1778, ¶ 18. The equitable doctrine of partial performance is applied in situations where it would be inequitable to permit the statute of frauds to operate and where the acts done sufficiently establish the alleged agreement to provide a safeguard against fraud in lieu of the statutory requirements. *See Delfino v. Paul Davies Chevrolet, Inc.*, 2 Ohio St.2d 282, 286-287, 209 N.E.2d 194 (1965). Partial performance sufficient to remove an agreement from the operation of the statute of frauds "'must consist of unequivocal acts by the party relying upon the agreement which are exclusively referable to the agreement.'" *U.S. Bank N.A. v. Stewart*, 7th Dist. Columbiana No. 12 CO 56, 2015-Ohio-5469, ¶ 27, quoting *Delfino* at 287. The party asserting partial performance must have undertaken acts that "'changed his position to his detriment and make it impossible or impractical to place the parties in status quo.'" *Bear v. Troyer*, 5th Dist. Guernsey Nos. 15 CA 17 and 15 CA 24, 2016-Ohio-3363, ¶ 33, quoting *Delfino* at 287; *see also LHPT Columbus The, LLC v. Capitol City Cardiology, Inc.*, 2014-Ohio-5247, 24 N.E.3d 712, ¶ 35 (10th Dist.).

**{¶34}** In this case, as detailed above, there is little doubt that there was, in fact, an agreement to reduce the monthly rent to $1,473.75 that was acted on by both parties for a significant period of time in such a manner as to unequivocally demonstrate partial performance. The record reflects that Specialized Component Sales paid, and that 3637 Green Road accepted, the reduced rent for at least 21 months (and for perhaps as many as eight or nine years), without claiming that any additional amounts were due under the lease. There is no reasonable explanation for the zero balance listed as of October 17, 2012, on the statement of account 3637 Green Road attached to its complaint except that the parties agreed to reduce the rent under the lease.

**{¶35}** The record further reflects that Specialized Component Sales changed its position in reliance on the rent reduction, i.e., by remaining as a month-to-month tenant rather than finding a cheaper place to rent, so as to make it "impossible or impractical" to return the parties to the status quo. Accordingly, the statute of frauds did not preclude enforcement of the parties' oral agreement to modify the rent due under the lease. *See, e.g., 200 West Apartments v. Foreman*, 8th Dist. Cuyahoga No. 66107, 1994 Ohio App. LEXIS 4081, *5-8 (Sept. 15, 1994) (written lease was orally modified by the acts of the parties when landlord agreed to accept half the rent in exchange for services provided by tenant, observing that even contracts that are required by the statute of frauds to be in writing can be modified orally "when the parties to the written agreement act upon the terms of the oral agreement"). Accordingly, 3637 Green Road's first assignment of error is overruled.

**Notice of Termination of Holdover Tenancy**

{¶36} In its second assignment of error, 3637 Green Road contends that under R.C. 5321.17(B), Specialized Component Sales was required to give 30 days' notice "before terminating the lease" and that it, therefore, should have been awarded rent for January 2013 as well as November and December 2012.

{¶37} R.C. 5321.17(B) states that "the landlord or the tenant may terminate or fail to renew a month-to-month tenancy by notice given the other at least thirty days prior to the periodic rental date." However, R.C. 5321.17(B) does not apply to commercial leases. *See* R.C. 5321.01(A)-(D) (defining "landlord," "tenant" and "rental agreement" as applying to "residential premises"); *Mark v. Long,* 180 Ohio App.3d 832, 2009-Ohio-581, 907 N.E.2d 759, ¶ 12 (4th Dist.); *Tower Realty v. Zalenski*, 7th Dist. Jefferson No. 07 JE 24, 2008-Ohio-3244, ¶ 22-26. 3637 Green Road does not claim that notice was required pursuant to a specific provision of the lease.

{¶38} As the trial court properly held, after the lease was terminated on October 31, 2012 and Specialized Component Sales remained on the premises, it became a holdover tenant (also known as a tenant at sufferance). As a holdover tenant, 3637 Green Road could elect to treat Specialized Component Sales as a trespasser or hold it to a new lease term. *Cleveland v. A.J. Rose Mfg. Co.*, 89 Ohio App.3d 267, 272, 624 N.E.2d 245 (8th Dist.1993), citing *Craig Wrecking Co. v. S.G. Loewendick & Sons, Inc.*, 38 Ohio App.3d 79, 81, 526 N.E.2d 321 (10th Dist.1987).

**{¶39}** The length of the term of a holdover tenancy is determined by the payment of rent set forth in the expired lease. *Kazmaier v. Fat Jacks, LLC*, 6th Dist. Wood Nos. WD-09-048 and WD-09-057, 2010-Ohio-3627, ¶ 18. An expired lease that provides for monthly rent creates a holdover tenancy from month-to-month. *Id.*; *see also Craig Wrecking* at 81-82 ("Absent any agreement to the contrary, the new lease term [under a holdover tenancy] is governed by the provisions of the original lease."), citing *Bumiller v. Walker*, 95 Ohio St. 344, 348-349, 116 N.E. 797 (1917). Furthermore, paragraph 23 of the lease provides that if Specialized Component Sales "remain[s] in possession of the leased premises after the date of the expiration of this Lease," it "shall be a tenant from month to month, and such tenancy shall be otherwise subject to all the conditions and covenants of this Lease." Accordingly, in this case, the term of the holdover tenancy was month to month.

**{¶40}** With respect to a lease of commercial property, a month-to-month holdover tenant does not need to give specific advance notice that it is terminating the lease at the end of the current holdover lease period. *See, e.g., Tower Realty* at ¶ 19-22; *Mark* at ¶ 11-12 (notice of an intent to vacate is not necessary to terminate a tenancy from a tenant holding over its term), citing *Gladwell v. Holcomb*, 60 Ohio St. 427 (1899). If a month-to-month holdover tenant vacates the premises at the end of any month, "'the tenancy ceases without liability for rent for the ensuing [month], though no notice of * * * intention to remove be given.'" *Mark* at ¶ 11, quoting *Gladwell* at 436. Accordingly, because Specialized Component Sales vacated the premises on December 3, 2012, as the

trial court properly determined, Specialized Component Sales was liable for the rent for that month and the preceding month, i.e., November and December 2012, but it was not liable for any further rent payments. 3637 Green Road's second assignment of error is overruled.

**Trial Court's Determination that 3637 Green Road Terminated "Entire" Lease Agreement and Notice of Vacation of Premises**

{¶41} In its third assignment of error, 3637 Green Road argues that the trial court erred in concluding that 3637 Green Road terminated the "entire" month-to-month lease effective October 31, 2012. It contends that because Zipkin told Sulzberger that Specialized Component Sales could continue to lease a portion of the leased premises, i.e., suite 3A, but not suite 2B, at the same rent, 3637 Green Road terminated the lease only as to suite 2B, and the lease remained in effect as to the remainder of the premises. 3637 Green Road's argument is meritless.

{¶42} In this case, competent, credible evidence supports the trial court's finding that 3637 Green Road's "changing of the terms of the rental agreement" constituted a termination of the month-to-month lease as of October 31, 2012. It was undisputed that in September 2012, Zipkin told Sulzberger that Specialized Component Sales needed to vacate suite 2B by October 31 or pay an additional $1,800 a month in rent and that Specialized Component Sales could continue leasing suite 3A at the same rent. Sulzberger testified that he rejected Zipkin's offer and that Specialized Component Sales then began taking steps to vacate the premises. 3637 Green Road offered no evidence

that Specialized Component Sales agreed to continue leasing suite 3A at the same rent and cites no authority supporting its claim that a landlord could lawfully terminate a lease as to one part of the premises and then unilaterally hold the tenant to the terms of the lease as to the remaining part of the premises.

**{¶43}** 3637 Green Road also takes issue with the trial court's finding that Specialized Component Sales provided sufficient notice that it was vacating the premises when it turned in the keys to Goldkrantz on December 3, 2013. It contends that the trial court should have awarded it rent through March 2013, when it claims it was first "put on notice" that Specialized Component Sales had vacated suite 3A.

**{¶44}** There was, however, no dispute that Specialized Component Sales dropped off the keys for the premises at 3637 Green Road's office and handed them to Goldkrantz, Zipkin's secretary and receptionist, on December 3, 2012. As the trial court noted, upon the expiration or termination of the lease, the lease required only that Specialized Component Sales "deliver the keys at the office of Lessor or Lessor's agent." No other notice of vacation was required under the lease. Accordingly, the trial court did not err in concluding that Specialized Component Sales provided sufficient notice that it had vacated the premises on December 3, 2012. 3637 Green Road's third assignment of error is overruled.

**Offsetting Security Deposit Against Rent Due**

**{¶45}** Although 3637 Green Road does not identify it as a separate assignment of error, it also claims that the trial court erred (1) in finding that Specialized Component

Sales paid a $1,751 security deposit because "it was unable to offer any evidence that [it] paid and was owed a security deposit" and (2) offsetting the rent Specialized Component Sales owed for November and December 2012 against its $1,751 security deposit because Specialized Component Sales "left the premises in [a] poor, un-rentable condition when it vacated that space." We disagree. The trial court's findings are supported by competent, credible evidence in the record.

{¶46} The fifth lease extension states that Specialized Component Sales had paid a security deposit of $1,737 and required it to make an additional $14 payment to increase the security deposit to $1,751. Sulzberger testified that it was his belief that Specialized Component Sales paid the full $1,751 security deposit required under the fifth lease extension but stated that, because it was so long ago, he either did not have, or could not locate, copies of checks or other documents confirming that the security deposit had been paid. He further testified that he did not believe that the security deposit had ever been applied to unpaid rent and that he never received any notice that any part of the security deposit had not been paid or had been used to offset rent or any other expense. Although 3637 Green Road asserts that, if paid, the security deposit was previously applied to late rent payments and, therefore, was no longer on deposit to offset what Specialized Component Sales owed under the lease, it offered no testimony or other evidence in support of that claim. 3637 Green Road introduced no records relating to the security deposit and the only witness (other than Sulzberger) who testified regarding the lease, Zipkin, had no knowledge of any facts related to the security deposit. Zipkin testified

that he "was not very much involved at all in rent collections or daily managing" and, as 3637 Green Road acknowledges in its brief, "any security deposit paid was paid well before [Zipkin] came into ownership of the premises" in January 2011.

{¶47} Under the fifth lease extension, 3637 Green Road had an obligation to "hold" the security deposit and — provided the covenants of the lease were "faithfully performed" — to "refund" the security deposit "at the expiration of the lease." Accordingly, if 3637 Green Road believed that unpaid rent (or any other sums) had been previously deducted from the security deposit, it was its burden to establish that fact. There is no evidence in the record that the security deposit had been previously applied to late rent or otherwise depleted (in whole or in part) and, therefore, was no longer available to offset what Specialized Component Sales owed under the lease.

{¶48} Likewise, although 3637 Green Road presented evidence that Specialized Component Sales had left property behind when it vacated the premises in December 2012 (which 3637 Green Road would presumably have to remove before re-renting the premises), as of the time of trial, 3637 Green Road had not removed the property from the premises and offered no evidence of what it would cost to remove the property from the premises. Therefore, there was no evidentiary basis upon which the trial court could reasonably conclude that 3637 Green Road was entitled to retain all or part of the security deposit to offset those costs.

**{¶49}** Accordingly, the trial court did not err in offsetting the rent due 3637 Green Road for November and December 2012 against Specialized Component Sales' $1,751 security deposit.

**Hearsay**

**{¶50}** In its fourth and final assignment of error, 3637 Green Road contends that the trial court erred in admitting "hearsay statements made by Nelson Barman" when Sulzberger testified regarding the conversation he had with Barman in 2003 or 2004 relating to a rent reduction.

**{¶51}** Hearsay is a "statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid.R. 801. A review of the record reveals that no "hearsay statements made by Nelson Barman" were introduced. Sulzberger testified only as to what he said to Barman[5] and what happened with respect to the rent following their discussion; he did not testify as to any out-of-court statements Barman made to him or anyone else.[6]

---

[5] 3637 Green Road does not contend that Sulzberger's testimony regarding what he said to Barman should not have been admitted on hearsay grounds.

[6] As to his discussion with Barman, Sulzberger testified as follows:

A. I'd say roughly the end of 2003[,] [t]he beginning of 2004 I had a discussion with Nelson about business being fairly bad at the time and I needed a reduction in my rent or I would probably have to look for [an]other cheaper place to do business. * * *

Q.    Mr. Sulzberger, who is Nelson?

A.    Nelson Barman, he was the building manager.

Furthermore, under Evid.R. 801(D)(2), "a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship," is not hearsay. Sulzberger testified that at the time of his discussion with Barman, Barman was the property manager and one of the partners of 3637 Green Road. As such, even if Sulzberger had testified to some out-of-court statement by Barman that was offered for the truth of the matter asserted therein, it would not have constituted hearsay under Evid.R. 801(D)(2). 3637 Green Road's fourth assignment of error is overruled.

---

Q.   Okay.

A.   And partner. * * *

Q.   What was your discussion with Mr. Barman in 2003 and 2004?

[PLAINTIFF'S COUNSEL]: Objection, Your Honor, to any statements by Mr. Barman.

THE COURT: That is correct. So you can indicate your conversation or your understanding, you can't state what he said because he is not present in court subject to cross-examination, which means what he is saying would be out of court sayings or hearsay. So you may describe your discussion and your understanding.

THE WITNESS: My half of it?

THE COURT: Correct.

A.   My half of the discussion was business was bad and I needed to have the rent reduced in able to afford that rent for that space or else I would have to look elsewhere for [a] less expensive place to do business.

Q.   Mr. Sulzberger, did the rent get reduced?

A.   Yes.

**{¶52}** Judgment affirmed.

It is ordered that appellee recover of appellant the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to the municipal court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

EILEEN A. GALLAGHER, PRESIDING JUDGE

EILEEN T. GALLAGHER, J., and
FRANK D. CELEBREZZE, JR., J., CONCUR