[Cite as *Ma v. Gomez*, 2023-Ohio-524.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

SIMON MA,                                          :

      Plaintiff-Appellee,                      :

                                     No. 111465

      v.                                       :

ALBERTO GOMEZ, ET AL.,                             :

      Defendants-Appellants.                   :

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** February 23, 2023

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-20-937446

---

*Appearances:*

Thrasher, Dinsmore & Dolan, Tim L. Collins, Elizabeth E. Collins and Ashley C. Kirk, *for appellee*.

Sam Thomas, III & Associates, LLC, and Sam Thomas, III, *for appellants*.

EILEEN A. GALLAGHER, J.:

{¶ 1} Defendants-appellants Alberto Gomez and Carlina Taylor (together, "Defendants") appeal orders of the Cuyahoga County Court of Common Pleas granting summary judgment in favor of the plaintiff-appellee, Simon Ma, and nullifying a quitclaim deed filed by Taylor.

{¶ 2} Gomez is the vendee of a land installment contract for real estate. Ma stepped into the shoes of the vendor and sought forfeiture of Gomez's interest in the contract. The trial court granted summary judgment for Ma on that claim and, for the reasons that follow, we affirm.

{¶ 3} Ma also sought declaratory judgment that a quitclaim deed to the property, filed by Taylor, was null and void for fraud. The trial court granted summary judgment on that claim as well and issued an order nullifying the deed. Because Ma recorded the trial court's judgment before the appellants obtained a stay of execution of the judgment, essentially quieting title to the property against Taylor, we conclude that this portion of the appeal is moot.

## I. Factual Background and Procedural History[1]

### A. The Land Installment Contract

{¶ 4} In May 2010, Alberto Gomez signed a land installment contract with an entity called Original Resources, Inc. for a single-family residence and associated real estate located at 2016-2018 Warren Road in Lakewood, Ohio.

---

[1] Ma and Gomez each submitted, in their summary-judgment briefing before the trial court, documents styled as "affidavits" but which do not contain notarial certificates indicating that the written statements were made under oath or affirmation. An affidavit is "a written declaration *under oath*, made without notice to the adverse party." (Emphasis added.) R.C. 2319.02. The notarial certificates on Gomez's and Ma's written statements are acknowledgments, not jurats. *Compare* R.C. 147.011(A) (defining an acknowledgment) and R.C. 147.011(C) (defining a jurat). The notarial certificate following Ma's affidavit specifically states that no oath or affirmation was given. The notarial certificate following Gomez's written statement provides only that Gomez "acknowledged that he did sign the foregoing instrument, and that the same is his free act and deed." Ohio notaries are required to clearly state if an oath or affirmation was

{¶ 5} Gomez testified that he looked at the property prior to entering into the contract. The land installment contract he signed contains the following language:

> Buyer hereby acknowledges, understands and agrees that Buyer has thoroughly inspected and examined the Property and has been afforded sufficient opportunity so to do. Buyer is familiar with all factors relevant to the Property's current and prospective use and its physical condition. Buyer further warrants and agrees that Buyer is familiar with and has examined and inspected or has been afforded sufficient opportunity to examine and inspect all matters with respect to * * * all aspects of its physical and structural condition related to the Property, and any and all other matters, facts or circumstances bearing upon the value of the Property in Buyer's judgment and for Buyer's prospective purposes and uses. * * * Buyer further acknowledges that Buyer is acquiring the Property in its "as is" condition and that Seller has made no promises, warranties or representations, express or implied, oral or written, with respect to the property * * *. In the event that any facts, conditions or circumstances change, or turn out differently from that which Buyer believes or knows concerning the property and related matters as of the date hereof, Buyer's obligations hereunder shall remain in full force and effect, and with no right to

---

administered and, therefore, we presume that Gomez's written statement was not made under oath or affirmation. R.C. 147.542(D).

Civ.R. 56(C) provides, in relevant part, that "[s]ummary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, * * * show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *No evidence or stipulation may be considered except as stated in this rule.*" (Emphasis added.) As this court has previously said, "'Inadmissible affidavits are no different from inadmissible evidence. They may be stricken in the discretion of the trial judge, but will support a judgment if [the judge] elects to consider them and no objection is made.'" *Brown v. Ohio Cas. Ins. Co.*, 63 Ohio App.2d 87, 90, 409 N.E.2d 253 (8th Dist.1978), quoting *United States v. Dibble*, 429 F.2d 598, 603 (9th Cir.1970) (Wright, J., concurring); *see also Wolk v. Paino*, 8th Dist. Cuyahoga No. 93095, 2010-Ohio-1755, ¶ 28 ("While a court, in its discretion, may consider other documents than those specified in Civ.R. 56(C) if there is no objection, there is no requirement that a court do so."). Here, no party objected to the trial court's consideration of these unsworn statements. Because the trial court did not strike the documents and no party objected to the deficiencies, we consider both parties' unsworn statements in reviewing this summary judgment.

delay payment or performance in the terms of this Agreement, or to seek any relief or compensation from Seller as a result thereof.

{¶ 6} Original Resources expressly disclaimed making any representations or warranties "regarding any liens or encumbrances affecting the Property, including but not limited to real property taxes, covenants, conditions, restrictions and easements, whether or not of record."

{¶ 7} After looking at the property, Gomez agreed to purchase it for $42,000. He agreed to pay this purchase price in installments. Under the contract, Gomez was to pay a down payment of $1,500 when the contract was executed. He was to execute and deliver a promissory note in favor of Original Resources in the principal amount of $40,500 at the close of escrow, secured by a mortgage on the property. He was to pay $540 a month[2] for 24 months thereafter, a portion of which was designated to cover property taxes. This 24-month period was considered a "probationary period." During the probationary period, the parties agreed that Gomez could possess the property as a tenant of Original Resources. The contract provided that these probationary payments were due on the first day of each month and would be considered delinquent if Original Resources did not receive them within ten calendar days of the due date. Delinquent payments would be assessed a late charge in the amount of 10 percent of the overdue amount.

---

[2] To improve readability, we have truncated dollar amounts throughout this opinion. For instance, we have truncated the monthly payment of $540.17 to $540.

**{¶ 8}** Original Resources agreed to record a quitclaim deed transferring the property to Gomez upon successful completion of the probationary period. Gomez was thereafter to continue paying $540 a month on the promissory note for 18 years.

**{¶ 9}** Gomez agreed that any notices or demands under the agreement must be addressed to Gomez at an address on Elbur Avenue in Lakewood.

**{¶ 10}** Gomez stated that he made the $1,500 down payment and paid delinquent real estate taxes on the property in the amount of $4,510. Gomez testified that Original Resources never requested that he execute any documentation other than the land installment contract. He said he never received a quitclaim deed, mortgage or promissory note from Original Resources.[3]

**{¶ 11}** Gomez testified that, after he moved into the property, he came to discover that the residence was "on the demo list" and had been set to be demolished by the city's building department. He said there were many things wrong with the property — "[t]oo many to mention." He stated that he incurred over $20,000 in legal fees to defend against actions initiated by the city of Lakewood regarding building-code violations at the property. He stated that he expended "substantial additional funds" to bring the property into compliance with building codes.

**{¶ 12}** Taylor, Gomez's romantic partner, testified that city officials came to the property after she and Gomez moved in and "told us we had to leave because the

---

[3] Ma stated that Original Resources, Inc. sent Gomez the note and mortgage to execute but Gomez never returned them despite "repeated requests." For purposes of reviewing this summary judgment, we resolve that dispute in Gomez's favor.

house was on the demo list." She stated that Gomez addressed the issue and she does not know how the issue was resolved.

{¶ 13} In November 2010, Original Resources assigned its rights under the land installment contract to Simon Ma. Original Resources transferred the property to Ma in January 2011 by quitclaim deed, which was recorded in February 2011.

{¶ 14} Ma stated that Original Resources provided him a payment ledger showing that Gomez had been late on many of his probationary-period installment payments. Gomez does not dispute that he was late on some of his payments but he testified that he was current on his payments at the time Original Resources assigned its rights to Ma. Ma, in turn, does not dispute this. He claims, however, that Gomez incurred additional fees and penalties as a result of the late payments and had not cured those deficiencies.

{¶ 15} Ma attached a copy of a payment ledger to his motion for summary judgment.[4] The ledger shows that Gomez was current on his payments as of November 2010 when Ma stepped into the shoes of Original Resources. Indeed,

---

[4] This document is not among the evidentiary matters specifically authorized by Civ.R. 56(C). *See supra* at fn. 1. This court has previously recognized that "the proper procedure for introducing evidentiary matters not specifically authorized by Civ.R. 56(C) is to incorporate them by reference in a properly framed affidavit." *Wolk v. Paino*, 8th Dist. Cuyahoga No. 93095, 2010-Ohio-1755, ¶ 26–28. As discussed above at footnote 1, the written statement Ma submitted with his motion, which discusses the ledger, is not an affidavit. Nevertheless, because the trial court did not strike this document and because the Defendants did not object to the deficiency, we consider this document in reviewing this summary judgment. *See id.* at ¶ 28 ("[A] court, in its discretion, may consider other documents than those specified in Civ.R. 56(C) if there is no objection * * *.").

Gomez made his installment payments early, on time or at least before the payments became delinquent until May 2011.

{¶ 16} Gomez paid his May 2011 installment payment late — on May 16 — and was assessed a late fee. He paid his June and July 2011 payments on time. He was late in August, September and October 2011 and was assessed late fees for each of those months. Thereafter, the payments tended to be later and later. He made his November 1, 2011 payment on December 15, 2011. He was late again on his December payment. He paid his January 1, 2012 payment on February 6. He did not make his February 2012 payment until April 2012. He made his March 2012 payment in June 2012. He was more than a month late in April, May, June and July 2012. He was more than three months late for his August, September, October and November 2012 payments. He missed December 2012 and January 2013 altogether, paying $2,516 in March 2013. He made his February 2013 payment in March 2013 and he did not make his March 2013 payment until May 21, 2013.

{¶ 17} The ledger does not show any payment made between May 21, 2013 and the execution of the Home Mortgage Payoff Agreement contract.

**B. Home Mortgage Payoff Agreement**

{¶ 18} Gomez and Ma entered into a written contract in the summer of 2013 that they titled a "Home Mortgage Payoff Agreement." They have different recollections of how this agreement came to be executed.

{¶ 19} Ma said he contacted Gomez to cure Gomez's default under the land installment contract. He said that Gomez agreed to pay the overdue amounts and

pay off the remainder that was due and owing under the contract in June 2013. Ma stated that he had a loan-modification agreement prepared that allowed Gomez to pay off the overdue balance at a discount if Gomez paid timely.

{¶ 20} Gomez testified that he had a couple conversations with Ma in which Gomez explained that he would have to "dump a bunch of money into the house" to remedy the housing code violations and avoid demolition. He said this payoff agreement resulted from those conversations.

{¶ 21} In any event, Gomez admitted that he negotiated and executed a payoff agreement with Ma and acknowledged his signature on the Home Mortgage Payoff Agreement.

{¶ 22} According to the Home Mortgage Payoff Agreement, Gomez agreed to pay off "the mortgage loan borrowed from" Ma and Ma agreed to transfer the property to Gomez through a quitclaim deed. The contract lists eight "detail steps" of the parties' agreement.

{¶ 23} First, the parties agreed that the principal balance under the land installment contract was $38,269 as of June 1, 2013; the parties referred to this as a "mortgage." They further agreed that the monthly payment had been $540 under the installment contract but was raised to $758 in March 2013 to reflect higher property taxes.

{¶ 24} Second, Ma agreed to reduce the "payoff balance" on the purchase price to $36,000 if Gomez paid the balance by July 31, 2013. Gomez also agreed to repay Ma $1,900, representing the amount Ma paid to cover property taxes that

Gomez had failed to pay to that point. The contract states that the $1,900 payment would "be considered as the down payment" on the $36,000 payoff balance.

{¶ 25} Third, the contract provided that the total payoff amount was $37,900 if Gomez paid that amount in full by July 31, 2013. The contract further provided that "[i]f this loan amount is paid off after 7/31/2013, [Gomez] shall be obligated to pay $758.79 each month thereafter." (Emphasis omitted.) In other words, if Gomez did not pay the reduced payoff balance by July 31, 2013, the contract would require him to continue making the monthly payments that would have been required under the original land installment contract.

{¶ 26} Fourth, Gomez was required to tender the $1,900 tax repayment when he delivered the signed payoff agreement.

{¶ 27} Fifth, Gomez was required to pay "for any title search fees to ensure the title is clear without any lien."

{¶ 28} Sixth, Ma was required to "mail the signed quit claim form to [Gomez.]" There is a handwritten note under the signatures on this agreement that states: "Note: quit claim deed to be under Carlina Taylor." Taylor signed the payoff agreement under that handwritten line. She testified that she signed at the bottom of the payoff agreement but never read it. She said Gomez told her she was signing a quitclaim deed and instructed her to sign it.

{¶ 29} Seventh, Gomez was required to "mail the money order to [Ma] with the remaining amount of $36,000."

{¶ 30} Eighth, Gomez was required to "record the quit claim deed."

{¶ 31} Ma signed the payoff agreement on July 15, 2013. Gomez signed on August 2, 2013.

{¶ 32} Gomez said he paid Ma the $1,900 "down payment" under the agreement.[5] It is undisputed that Gomez never paid the remainder of the $36,000 reduced payoff amount.

{¶ 33} Ma mailed a quitclaim deed to Defendants around the time that this agreement was executed. Ma says he mailed the deed inadvertently during a period of stress related to the illness and death of a family member.

## C. Alleged Oral Agreement Subsequent to the Payoff Agreement

{¶ 34} In an unsworn statement attached to his opposition to the motion for summary judgment, Gomez stated that he contacted Ma shortly after signing the payoff agreement and told Ma that he could not afford to pay off the balance of the purchase price while at the same time defending against the pending legal actions related to the property and paying for the repairs necessary to bring the property up to code. The unequivocal nature of his recollection about the timing of this alleged agreement contradicts his sworn deposition testimony, which proceeded as follows:

Q. Okay. So when did this verbal agreement take place?

A. Again, we had a couple of conversations after this paperwork [the payoff agreement] was signed.

Q. So when did the verbal agreement take place?

---

[5] Ma said Gomez never made this payment, but we resolve that dispute in Gomez's favor for purposes of reviewing this summary judgment.

A. A couple of days. Again, I don't recall. It was a couple of days after this agreement.

Q. Okay.

A. Or before the agreement. I — I don't really recall exactly. * * *

Q. So what was the verbal agreement?

A. The verbal agreement is the agreement that we reached that's on the paperwork. Okay? But as far as that, the problems would have to be taken care of with the Building Department for me to be able to settle out the balance of that — on that.

* * *

Q. Well, you said you had that oral conversation a few days afterwards.

A. A few days — a few days before.

{¶ 35} Therefore, Gomez's deposition testimony was that the alleged oral agreement was reached either a couple of days before or after the payoff agreement was executed and the terms of that agreement were reflected in the written payoff agreement except that Gomez claims that Ma orally agreed "that I could defer payments on the balance owed on the property until such time as the building code issues and demolition issues had been resolved." Gomez said that "it was either dump money into the Building Department into the — into the house so that the house would not go back on the demo list or settle it out with him."

{¶ 36} Gomez admitted that there was no date certain by which he was required to have the building issues resolved under the parties' alleged oral agreement. But he testified that "it's getting to that point that it's almost resolved."

{¶ 37} It does not appear that Gomez made any further payments to Ma after signing the Home Mortgage Payoff Agreement. He admitted that he has not made any payments to Ma since receiving the quitclaim deed Ma inadvertently sent to him. Further, Gomez has not been paying the taxes on the property; Ma has been paying the taxes. Gomez said it was his understanding that Ma would pay the taxes on the property until he resolved the issues with the building department.

{¶ 38} Gomez specifically admitted as follows:

Q. * * * [Y]ou acknowledge that you haven't paid the amounts remaining and due to Mr. Ma; is that correct?

A. I already answered the question.

Q. Well, I'm just trying to —

A. Yes.

Q. — clarify.

A. Yes.

{¶ 39} Gomez stated that Ma never made any demands on him for any amounts due and owing under the installment land contract or the payoff agreement between August 2013 and November 2020. He said Ma never even sent him a billing statement, an accounting of accrued interest and penalties "or any type of communication of any kind regarding payment of sums due for the property." Gomez said he was not aware of the amount that Ma claimed he owed until he received a copy of the complaint. Ma said that he has attempted to call Gomez "numerous times" since the execution of the payoff agreement but Gomez has not answered his calls.

{¶ 40} Ma attached to his motion for summary judgment a notice of default, on the letterhead of a law firm and addressed to Gomez both at the subject property on Warren Road and at an Elbur Avenue address identified as Gomez's mailing address for notices under the installment contract. The notice is dated August 13, 2020. The notice provides as follows, in relevant part:

> You have failed to comply with payment and other obligations under the land contract, and the subsequent Home Mortgage Payoff Agreement (Attached). You owe $103,776.73 as of August 31, 2020 in principal and interest as a result of your defaults, including nonpayment of agreed to monthly payments and taxes. To cure your default and become current, you must pay $74,516.20 for past due payments of 87 months since 7/1/2013 with the amended monthly payment of $758.79, $6,601.47 for late fees and $1,900.00 of property taxes which Mr. Ma paid on 6/26/2013, totaling $74,516.20. Thereafter you will owe $29,250.53 from September 1, 2020 if you cure your default. You also have not supplied proof of insurance. Please be advised that unless you pay $74,516.20 within ten (10) days of the date hereof, and supply proof of fire insurance, then the Land Contract will stand forfeited.

{¶ 41} Gomez denied receiving the notice.

**D. Filing of the Quitclaim Deed**

{¶ 42} Ma filed suit against Gomez on September 18, 2020. He asserted a claim for forfeiture of the land installment contract and sought declaratory judgment that the contract was terminated and that Gomez's interest in the property has been forfeited, "with all rights as to the subject property restored to [Ma]."

{¶ 43} Taylor testified that Gomez informed her when the original complaint was filed. She said Gomez gave her the quitclaim deed he had received from Ma and her lawyer advised her to file it. Gomez said he waited to file the

quitclaim deed because he did not want Taylor to have issues with the city building department.

**{¶ 44}** Taylor asked her lawyer to file the quitclaim deed and the lawyer did so on October 26, 2020. She said she did not know that the property was not fully paid for when the deed was filed. She admitted that she did not pay any money for the property and said she did not know how much Gomez paid for the property. Taylor testified that she never saw a copy of the land installment contract.

**{¶ 45}** Ma filed an amended complaint on November 13, 2020, adding a claim of fraud against Defendants for recording the quitclaim deed. To his initial request for forfeiture of the land installment contract, Ma requested compensatory damages and a judgment declaring that the quitclaim deed "be reversed, and that title be reinstated to the condition it was prior to the filing" of the quitclaim deed.

**{¶ 46}** Ma filed a motion for summary judgment, which the Defendants opposed. The trial court granted Ma's motion for summary judgment and stated that a hearing would be set to determine Ma's damages and any setoffs that may apply.[6] Ma then voluntarily withdrew all of his damages claims and the trial court entered a journal entry indicating that the order was final since there is "no just cause for delay."

---

[6] The trial court did not set forth detailed reasoning for its grant of summary judgment for the plaintiff. We strongly encourage trial courts to explain a decision to grant summary judgment in a written opinion. *See Ferguson v. Univ. Hosps. Health Sys., Inc.*, 8th Dist. Cuyahoga No. 111137, 2022-Ohio-3133, ¶ 72.

{¶ 47} On March 29, 2022, the trial court entered an order declaring the quitclaim deed Taylor filed to be "null and void for lack of adequate consideration and for failure of delivery." The order declared that title to the property is vested in Ma's name. The order stated that because the damages claims had been dismissed, all issues in the case had been determined.

{¶ 48} The Defendants appealed from these orders, raising the following two assignments of error for review:

> Assignment of Error 1:
>
> Reviewing Appellee's Motion for Summary Judgment *de novo*, the Record is clear and convincing that the trial court erred to the prejudice of the Appellants by granting the Appellee's Motion for Summary Judgment on the Appellee's Breach of Contract cause of action.
>
> Assignment of Error 2:
>
> Reviewing Appellee's Motion for Summary Judgment *de novo*, the Record is clear and convincing that the trial court erred to the prejudice of the Appellants by granting the Appellee's Motion for Summary Judgment on the Appellee's Fraud cause of action.

{¶ 49} On November 9, 2022, Ma filed a motion to dismiss the appeal as moot based on an alleged "voluntary satisfaction" of the trial court's judgment.[7] The Defendants did not file a response to the motion to dismiss the appeal.

---

[7] Ma did not raise this mootness argument in his appellee brief, although he could have done so. He recorded the trial court's March 29, 2022 order with the Cuyahoga County Fiscal Officer in April 2022 and he filed his appellee brief in August 2022. While the better practice would have been for Ma to raise the issue earlier, we must consider the mootness argument. *Cf. Pride v. Cleveland Hts. Nuisance Abatement Bd. of Review*, 8th Dist. Cuyahoga No. 110638, 2022-Ohio-1236, ¶ 17 (considering mootness argument raised for the first time at oral argument).

## II. Law and Analysis

### A. Voluntary Satisfaction of Judgment Through Recording

{¶ 50} Before turning to the merits of this case, we first address Ma's contention that the appeal is moot because Ma recorded the trial court's judgment nullifying the quitclaim deed before the Defendants filed a notice of appeal or sought to post a supersedeas bond. We conclude that the Defendants' second assignment of error is moot. Even if, *arguendo*, their first assignment of error is not moot, we find that Ma was entitled to summary judgment.

{¶ 51} It is a "well-established principle of law" that voluntary satisfaction of a judgment renders an appeal from that judgment moot. *Blodgett v. Blodgett*, 49 Ohio St.3d 243, 245, 551 N.E.2d 1249 (1990); *Francis David Corp. v. MAC Auto Mart, Inc.*, 8th Dist. Cuyahoga No. 93951, 2010-Ohio-1215, ¶ 11 ("'Voluntary satisfaction of judgment waives the right to appeal.'"), quoting *Brickman v. Frank G. Grickman Trust*, 8th Dist. Cuyahoga No. 81778, 2004-Ohio-2006, ¶ 8. As the Ohio Supreme Court explained in *Blodgett*:

> "'Where the court rendering judgment has jurisdiction of the subject[] matter of the action and of the parties, and fraud has not intervened, and the judgment is voluntarily paid and satisfied, such payment puts an end to the controversy, and takes away from the defendant the right to appeal or prosecute error or even to move for vacation of judgment.'"

*Blodgett* at 245, quoting *Rauch v. Noble*, 169 Ohio St. 314, 316, 159 N.E.2d 451 (1959), quoting *Lynch v. Bd. of Edn. of City School Dist. of City of Lakewood*, 116 Ohio St. 361, 156 N.E. 188 (1927), paragraph three of the syllabus; *see also Cleveland v. Embassy Realty Invests., Inc.*, 8th Dist. Cuyahoga No. 105091, 2018-Ohio-4335,

¶ 20 (If the successful party obtains a satisfaction of the judgment, any appeal "'must be dismissed because the issues raised in the appeal have become moot.'"), quoting *Hagood v. Gail*, 105 Ohio App.3d 780, 785, 664 N.E.2d 1373 (11th Dist.1995).

{¶ 52} If a party adversely affected by a judgment fails to obtain a stay of the judgment, the successful party to the judgment has the right to attempt to obtain a satisfaction of the judgment even if an appeal of the judgment is pending. *See, e.g.*, *Trumbull Twp. Bd. of Trustees v. Rickard*, 11th Dist. Ashtabula No. 2017-A-0048, 2019-Ohio-2502, ¶ 22, 27; *Wiest v. Wiegele*, 170 Ohio App.3d 700, 2006-Ohio-5348, 868 N.E.2d 1040, ¶ 12 (1st Dist.). Where a party is entitled to enforce a judgment, actions to enforce the judgment do not render subsequent payment involuntary. *CommuniCare Health Servs. v. Murvine*, 9th Dist. Summit No. 23557, 2007-Ohio-4651, ¶ 19. An appellant is deemed to have acted voluntarily in satisfying a judgment when the appellant fails to seek a stay of execution prior to the judgment being satisfied. *Hagood* at 790. As the Third District explained in *Crites v. Crites*, 3d Dist. Defiance No. 4-18-03, 2019-Ohio-1043:

> Generally, a party may avoid a voluntary satisfaction of judgment by moving to stay execution of the judgment and by posting a supersedeas bond in an amount deemed by the trial court to be adequate to secure the judgment. *See* R.C. 2505.09; Civ.R. 62(B); App.R. 7(A), (B). "'Once the appellant obtains the stay of execution, neither the trial court nor the non-appealing party is able to enforce the judgment.'" *Alan v. Burns*, 9th Dist. Medina No. 3271-M, 2002-Ohio-7313, ¶ 5, quoting *LaFarciola v. Elbert*, 9th Dist. Lorain No. 98CA007134, 1999 Ohio App. LEXIS 5833, 2 (Dec. 8, 1999). "'The lone requirement of Civ.R. 62(B) is the giving of an adequate supersedeas bond.'" *Burns* at ¶ 5, quoting *State ex rel. Ocasek v. Riley*, 54 Ohio St.2d 488, 490, 377 N.E.2d 792 (1978). Conversely, "[a] judgment is voluntarily satisfied 'where the party fails to seek a stay prior to the satisfaction of [the]

judgment.'" *Summit Servicing Agency, L.L.C. v. Hunt*, 9th Dist. Summit No. 28699, 2018-Ohio-2494, ¶ 13, quoting [*Murvine* at] ¶ 20. *Id.* at ¶ 11.

{¶ 53} This rule applies to real-estate proceedings. *Royal Fleet Auto Sales, L.L.C. v. Chambers*, 8th Dist. Cuyahoga No. 107769, 2019-Ohio-2236; *Filip v. Wakefield Run Master Homeowners' Assn.*, 9th Dist. Medina No. 17CA0025-M, 2018-Ohio-1171.

{¶ 54} Here, the trial court entered its judgment declaring the quitclaim deed Taylor filed to be "null and void for lack of adequate consideration and for failure of delivery." The order declared that title to the property is vested in Ma's name. Ma filed the judgment in the recorder's office on April 22, 2022, effectively quieting title against Taylor.

{¶ 55} Defendants filed their notice of appeal on April 27, 2022; they contemporaneously filed a motion in the trial court to stay execution of the judgment — which had already been executed — and asked the court to waive the posting of a supersedeas bond. They specifically noted that "if the Plaintiff or Court proceeds, the instant appeal could be rendered moot." The trial court denied the motion.

{¶ 56} Even if we were to agree with the Defendants that the trial court erred in granting summary judgment to Ma on his fraud claim, our reversal would have no practical effect because the remedy Ma sought on that claim — the judgment nullifying the quitclaim deed and removing the cloud on his title to the property —

was satisfied before the Defendants appealed, sought a stay of execution or posted a supersedeas bond. *See Royal Fleet Auto Sales, L.L.C.* at ¶ 21. Therefore, the Defendants' second assignment of error, addressed to the fraud claim and the judgment nullifying the quitclaim deed, is moot.

{¶ 57} The dissent's conclusion that this assignment of error is not moot seems to stem from the conclusion — rejected by the trial court — that Ma's mailing of the quitclaim deed operated to transfer the property to Taylor. *See below* at ¶ 114, 119 ("Ma transferred title to Taylor, but the payment became delayed. * * * Ma was on notice of his transferring the title of the property to Taylor in 2013."). If Taylor validly held title to the property as of 2013, the dissent reasons that the trial court's order had the effect of transferring the property back to Ma. The order actually declared that there had been no valid transfer to Taylor in the first place.

{¶ 58} A deed must be validly delivered to be operative as a transfer of ownership of real property. *Turney, L.L.C. v. Cuyahoga Cty. Bd. of Revision*, 2015-Ohio-4086, 43 N.E.3d 868, ¶ 12 (8th Dist.). While a grantee's possession of a deed creates a presumption of valid delivery, "'[i]t is essential to delivery that there not only be a voluntary delivery, but there must also be an acceptance thereof on the part of the grantee, with the mutual intention of the parties to pass title to the property described in the deed.'" *Id.*, quoting *Temple v. Temple*, 2015-Ohio-2311, 38 N.E.3d 342, ¶ 42–43 (3d Dist.). "Delivery imports transfer of possession or the right to possession of the instrument with the intent to pass title as a present transfer. * * * [T]he mere manual transfer of a deed does not constitute delivery

unless it is coupled with an intent of a present, immediate and unconditional conveyance of title." *Kniebbe v. Wade*, 161 Ohio St. 294, 297, 118 N.E.2d 833 (1954).

{¶ 59} The trial court's order declared the quitclaim deed to be "null and void * * * for failure of delivery." It did not transfer title back to Ma; it said that Ma always held title to the property.

{¶ 60} We address this distinction not because we have rejected Defendants' arguments that the trial court erred in granting summary judgment on the fraud claim and finding a failure of delivery but to further explain, in light of the dissent, why the second assignment of error is moot. Following the reasoning of *Royal Fleet Auto Sales, L.L.C.*, the recording of the trial court's judgment had the effect of quieting title to the property against Taylor. *See Royal Fleet Auto Sales, L.L.C. v. Chambers*, 8th Dist. Cuyahoga No. 107769, 2019-Ohio-2236, ¶ 21. Defendants do not ask us to depart from this reasoning (they did not respond to the mootness argument at all) and we see no reason to do so in the absence of briefing on the issue.[8]

{¶ 61} The mootness analysis is more complicated as it relates to Defendants' first assignment of error. The subject of the first assignment of error is

---

[8] We do not consider whether the dissenting opinion properly addressed the merits of the second assignment of error — including the effect of Ma's dismissal of the request for compensatory damages and the effect of the statute of limitations — because those arguments are moot. *See Filip*, 2018-Ohio-1171, at ¶ 7 ("'The duty of this court, as of every other judicial tribunal, is to decide actual controversies by a judgment which can be carried into effect, and not * * * to declare principles or rules of law which cannot affect the matter in issue in the case before it.'"), quoting *Miner v. Witt*, 82 Ohio St. 237, 92 N.E. 21 (1910), syllabus.

the trial court's grant of summary judgment as to Ma's claim for forfeiture of the land installment contract. The judgment for Ma resulted in the installment contract being cancelled and Gomez's interests in the contract being forfeited. R.C. 5313.09(A). However, a few facts unique to this case give us pause as to whether the order Ma recorded effectively quiets title against Gomez. First, the land installment contract itself was never recorded as required by R.C. 5301.25(A). Second, neither Ma's motion for summary judgment nor the trial court's order of November 9 specifically reference the forfeiture of the land installment contract. Therefore, the legal effect of the order Ma recorded — as it relates to Ma's interest in the property as against Gomez — is arguably gleaned only after review of the amended complaint and the trial court's order granting summary judgment, neither of which were recorded.

{¶ 62} Under the unique facts and circumstances of this case, we will not deny the Defendants substantive appellate review of this assignment of error. Even if the first assignment of error is not moot, though, we would affirm.

## B. Forfeiture of the Land Installment Contract

{¶ 63} Ma's breach-of-contract claim sought forfeiture of the land installment contract. In relevant part, Ma alleged as follows in his amended complaint:

> [Gomez] has paid toward his Installment Purchase Land Contract for less than five (5) years since the Contract's formation, and has paid less than twenty percent (20%) of the purchase price of the subject property.

> [Ma] is entitled to a declaration that [Gomez]'s interest in the subject property stands forfeited, that the Installment Purchase Land Contract is terminated and cancelled, and that [Ma] is entitled to restitution of the subject property * * *.

(Emphasis deleted.)

{¶ 64} Ma's summary-judgment briefing did not specifically reference the statutes relevant to forfeiture or foreclosure of land installment contracts; he focused his arguments on the elements of a breach of contract and argued that there was no genuine dispute that Gomez breached the installment contract and the payoff agreement in various ways. He asked generally for a judgment in his favor, arguing that "[s]ummary judgment should be granted as to both claims, and the property should be reverted back to the Plaintiff and damages awarded * * *."

{¶ 65} Gomez also focused his arguments to the trial court on the elements of a breach of contract. Specifically, he argued that Original Resources — and therefore Ma, as assignee of the contract — had failed to fully perform their obligations under the installment contract. He also argued that he and Ma had come to an oral agreement that Gomez could defer payments on the contract until the demolition and compliance issues had been resolved. He made no argument based on the statutes relevant to forfeiture or foreclosure of land installment contracts.

{¶ 66} On appeal, Gomez argues for the first time that Ma did not meet the statutory requirements that would allow for forfeiture of the land installment contract. We address that argument first.

{¶ 67} R.C. 5313.08 provides as follows:

> If [a land installment] contract has been in effect for less than five years, in addition to the other remedies provided by law and after the expiration of the periods prescribed by sections 5313.05 and 5313.06 of the Revised Code, if the vendee is still in default of any payment the vendor may bring an action for forfeiture of the vendee's rights in the land installment contract and for restitution of [the vendor's] property * * *.

{¶ 68} While the statute only allows forfeiture — as opposed to foreclosure — when "the contract has been in effect for less than five years," this phrase is commonly understood to allow forfeiture unless the vendee has made payments in accordance with the contract for five years or more. *See Thomas D. Stiffler, Trustee v. F.I.O.P Assocs., LLC*, 2d Dist. Montgomery No. 28501, 2020-Ohio-826, ¶ 11 ("Where the vendee has not yet made payments under the contract for a period of five years, R.C. 5313.08 permits the vendor to bring an action for forfeiture of the vendee's rights and for restitution of the property."); *Clifton v. Malone*, 4th Dist. Pike No. 429, 1989 Ohio App. LEXIS 4478, 8–9 (Nov. 22, 1989) ("Forfeiture is available only where the vendee has neither made payments under the contract for five years, nor paid a sum equal to twenty percent of the purchase price."); *Chem. Bank v. Sullivan*, 121 Ohio App.3d 111, 112, 699 N.E.2d 105 (6th Dist.1997) ("In a default situation, a vendor under a land contract has two potential options available to reclaim the property. The first is a relatively summary procedure known as a forfeiture. If a defaulting vendee has paid on the contract for less than five years and accrued payments are less than twenty percent of the total purchase price, the vendor may institute a forfeiture action."); *Taylor v. Nickston Invests.*, 10th Dist. Franklin No. 92AP-508, 1992 Ohio App. LEXIS 5836, 12–13

(Nov. 17, 1992) ("Conversely, where a buyer fails to meet either of [the R.C. 5313.07] requirements, the seller may seek forfeiture of the property as provided for in R.C. 5313.08 and R.C. Chapter 1923.").

{¶ 69} This is so because the forfeiture statute is read in conjunction with R.C. 5313.07, which sets forth the requirements for foreclosure. That statute requires foreclosure "[i]f the vendee of a land installment contract has paid in accordance with the terms of the contract for a period of five years or more from the date of the first payment * * *." Together, R.C. 5313.07 and 5313.08 "address and provide for all available remedies in a breach of land contract action * * *." *Castro v. Prokop*, 11th Dist. Trumbull No. 89-T-4238, 1991 Ohio App. LEXIS 1061, 5 (Mar. 15, 1991).

{¶ 70} We are aware that at least one appellate court, in dicta, read the statute to prohibit forfeiture "where five years from the first payment has elapsed * * *." *Alright v. Wayne*, 5th Dist. Morrow No. CA-613, 1984 Ohio App. LEXIS 9537, 4 (Mar. 2, 1984) ("R.C. 5313.07 limits the remedies to vendor available upon vendee default where five years from the first payment has elapsed, or the vendee has paid 20% or more of the purchase price."). We are also aware of two appellate decisions that squarely addressed the issue and came out differently. In *Vukin v. Gerena*, 9th Dist. Summit No. 3340, 1982 Ohio App. LEXIS 12633 (Sept. 15, 1982), the Ninth District Court of Appeals examined these statutes and concluded that "[w]hen the contract has been in effect for more than five years, even though the vendee has not paid in accordance with the contract for five years or more, the [vendor] may not

bring a forfeiture action.  This does not mean * * * that [the vendor] is limited to a foreclosure action.  Rescission, for example, might lie depending on the particular circumstances."  Another panel of the Ninth District came to the same conclusion, albeit with less detailed reasoning, in *Sancic v. Jackson* (per curiam), 9th Dist. Summit No. 11082, 1983 Ohio App. LEXIS 15770 (July 6, 1983).

{¶ 71} The dissenting opinion would also hold differently.  The dissent does not discuss *Vukin* but follows its reasoning.  The dissent would find that a vendor cannot obtain forfeiture under R.C. 5313.08 if the land installment contract has been "in operation" or "in force" for longer than five years. *Below* at ¶ 111; *compare Vukin* at 6–7.  The dissent does not specifically address when the contract should be considered "in operation," that is to say whether the clock runs from the date of the first payment (as suggested by *Alright*) or from some other point.  Neither does *Vukin*.  Both *Vukin* and the dissent would also have the vendor's relief in situations like this — where five years have passed from some initial starting point but where payments have not been made for five years — "lay elsewhere" than forfeiture. *See below* at ¶ 110; *Vukin* at 7. *Vukin* suggests that the vendor's relief lies in rescission. *Vukin* at 7.  The dissenting opinion suggests that the vendor's relief — or Ma's relief, at least — is limited to monetary damages for breach of contract. *See below* at ¶ 114 ("[I]t must be recognized that this is a breach of contract action solely based on general principles of contract.").

{¶ 72} With due respect to the conclusion reached by two panels of the Ninth District and to the dissenting opinion, we are persuaded to follow the reasoning of

the Second, Fourth, Sixth and Tenth Districts in holding that forfeiture was an available remedy to Ma because Gomez had not paid in accordance with the land installment contract for a period of five years or more.

{¶ 73} Reading R.C. 5313.07 and 5313.08 together, it is clear that the legislature (1) required foreclosure proceedings when the vendee has paid in accordance with the contract for at least five years or has paid 20 percent or more toward the purchase price and (2) allowed forfeiture proceedings where these circumstances are not present. Our reading does not render R.C. 5313.08 "meaningless," as the dissent contends. Our reading says that the phrase "in effect," as used in that statute, is defined by reference to the more specific language of the immediately preceding statutory section. This conclusion is readily reached by a plain reading of these two statutes and bolstered after consideration of the history and purposes of R.C. Chapter 5313.

{¶ 74} The Ohio Supreme Court discussed the history of R.C. Chapter 5313 in *Kiser v. Coleman*, 28 Ohio St.3d 259, 503 N.E.2d 753 (1986), as follows:

> The law in force prior to the enactment of R.C. Chapter 5313 most clearly granted to vendors of a land contract the right to declare the vendee's forfeiture for breach of such land contract without legal proceedings where such right was contractually agreed upon by the parties. Further, such forfeiture became effective upon notice. Judicial relief was limited to equitable considerations alone.
>
> In 1969, the General Assembly acted to change that state of the law by enacting R.C. Chapter 5313, land installment contracts. The chapter made express changes in the above common law by its provisions contained in R.C. 5313.07 and 5313.08. * * *
>
> These provisions limit the availability of forfeitures to specific circumstances.

(Citations omitted.) *Id.* at 261–262.

{¶ 75} The court described that the enactment of R.C. 5313.07 created "new substantive rights," in that "the defaulting vendee has been effectively granted an equity of redemption in the property" "[u]pon payment of twenty percent of the purchase price or payments extending over five years." *Id.* at 263. The court further described that "[t]he contractual right of possession which was in the vendee only so long as the contract was in force was established as a legal right in the vendee by R.C. 5313.07, which would exist despite the enforceability of the contract." *Id.*

{¶ 76} In other words, at common law a vendor could forfeit a vendee's interest in a land installment contract upon default, in accordance with the terms of their contract. The enactment of R.C. 5313.07 enshrined a legal right that cannot be forfeited — notwithstanding a forfeiture right provided by the contract — after the vendee has paid 20 percent of the purchase price or made payments extending over five years. It follows, as the other side of the coin, that the legislature intended a vendor to retain the ability to forfeit a vendee's interest in a land contract where the right enshrined in R.C. 5313.07 has not attached. The Supreme Court in *Kiser* made no mention of any kind of intermediate protection the General Assembly sought to provide to vendees in Gomez's situation — more than five years after a land contract was executed but where the vendee had not made payments for five years or more. There is no such intermediate protection.

{¶ 77} Chapter 5313's intent was to "prevent a 'windfall to a vendor who has previously collected substantial sums under a land contract and/or has actually

recovered the property.'" *Howard v. Temple*, 172 Ohio App.3d 21, 2007-Ohio-3074, 872 N.E.2d 1260, ¶ 9 (4th Dist.), quoting *Farkas v. Bernard*, 10th Dist. Franklin No. 95APE10-1365, 1996 Ohio App. LEXIS 1953, 10 (May 16, 1996). The legislature provided the protections of foreclosure proceedings to vendees that "ha[ve] a large amount of equity in the real estate." *Castro v. Prokop*, 11th Dist. Trumbull No. 89-T-4238, 1991 Ohio App. LEXIS 1061, 5 (Mar. 15, 1991). A vendee who does not amass sufficient equity by paying 20 percent of the purchase price or making payments over five years does not receive the protection of the right conferred by R.C. 5313.07.[9]

{¶ 78} It is undisputed that at the time Ma instituted these forfeiture proceedings, Gomez had not paid in accordance with the contract for five years. Gomez made the first payment under the contract in 2010 and he stopped making payments in 2013. Gomez does not claim that he has paid 20 percent or more toward the purchase price either; indeed, he agreed in the payoff agreement that as of summer 2013 there remained $38,269 remaining on the principal balance toward the purchase price of $42,000. Thus, forfeiture was a remedy available to Ma under R.C. 5313.08.

{¶ 79} Having found that forfeiture was an available remedy here, we turn to the merits of Ma's motion for summary judgment on that claim. A judgment for

---

[9] Our holding today does not address the merits of any claim that may lie against a vendor, for unjust enrichment or otherwise; there was no counterclaim asserted against Ma here.

the vendor on a forfeiture claim "operate[s] to cancel the land installment contract as of a date to be specified by the court." R.C. 5313.09.

{¶ 80} We review summary-judgment rulings de novo, applying the same standard as the trial court. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996). Under Civ.R. 56, summary judgment is appropriate when no genuine issue exists as to any material fact and, in viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can reach only one conclusion that is adverse to the nonmoving party, entitling the moving party to judgment as a matter of law.

{¶ 81} On a motion for summary judgment, the moving party carries an initial burden of identifying specific facts in the record that demonstrate their entitlement to summary judgment. *Dresher v. Burt*, 75 Ohio St.3d 280, 292–293, 662 N.E.2d 264 (1996). If the moving party fails to meet this burden, summary judgment is not appropriate; if the moving party meets this burden, the nonmoving party has the reciprocal burden to point to evidence of specific facts in the record demonstrating the existence of a genuine issue of material fact for trial. *Id.* at 293. Summary judgment is appropriate if the nonmoving party fails to meet this burden. *Id.*

{¶ 82} Ma met his initial summary-judgment burden by pointing to evidence establishing that Gomez was consistently delinquent on payments under the land installment contract and stopped making payments altogether in 2013. He further pointed to evidence that he and Gomez entered into a payoff agreement

under which Gomez undertook to either pay off the entire reduced purchase price by July 2013 or to continue making monthly installment payments under the installment contract, yet Gomez failed to do either. Ma has been paying the property taxes on the property for years. He sent Gomez a notice of default that complies with R.C. 5313.06 prior to filing suit and directed the notice both to the real estate that is the subject of the installment contract and the Elbur Avenue address that Gomez agreed was the appropriate address to which the vendor could direct notices under the agreement.

{¶ 83} Defendants have not met their reciprocal burden to point to evidence of specific facts demonstrating the existence of a genuine issue of material fact for trial. Their arguments are essentially three-fold: (1) Original Resources, Inc. failed to include certain disclosures they say were required by R.C. 5131.02(A) in the land installment contract, particularly by failing to identify orders pending against the property by public agencies, (2) Gomez contends that he and Ma came to an oral agreement that Gomez could defer payments under the payoff agreement until the compliance issues with the city had been fully resolved and (3) the trial court was not permitted to forfeit the contract without consideration of "repayment, set-off, credit, or reimbursement or other contractual or equitable relief to the Appellants." None of these arguments preclude summary judgment.

{¶ 84} It is true that, in several ways, Original Resources and Ma failed to comply with the statutory requirements for land installment contracts. Ma does not seriously dispute Gomez's complaints about the disclosures required under the

statute, and it is undisputed that the contract was never recorded. However, these failures do not excuse Gomez's failure to make payments under the installment contract. A vendee has a statutory cause of action to enforce the provisions of R.C. Chapter 5313; a vendee may seek "appropriate relief" in a municipal court, county court or court of common pleas. R.C. 5313.04. Gomez did not do so, even after he discovered shortly after entering the property that the house was on the "demolition list."

{¶ 85} Moreover, Gomez has not shown how the failure to comply with these statutory requirements prevented him from complying with his obligation to make monthly payments. Gomez entered into the land installment contract after inspecting the property and expressly agreeing that he was accepting the property as is, with Original Resources disclaiming making any representations or warranties "regarding any liens or encumbrances affecting the Property, including but not limited to real property taxes, covenants, conditions, restrictions and easements, whether or not of record." And beyond generally claiming that he paid $20,000 to deal with legal matters related to the building violations, Gomez has not explained how these expenses prevented him from making monthly payments or why he entered into the payoff agreement that recommitted him to making monthly payments if he could not pay off the entire balance owed.

{¶ 86} For all these reasons, Gomez has not established a genuine dispute that the vendors' failure to follow certain statutory requirements for land installment contracts excused his default on the monthly payments.

{¶ 87} Ma correctly argues that the alleged oral agreement that Gomez claims was reached regarding continued payments on the property is unenforceable under the statute of frauds. "[A]n agreement concerning an interest in real property is unenforceable unless it is reflected in a signed writing containing all the essential terms of the agreement and signed by the party to be charged." *JP Morgan Chase Bank, N.A. v. Spears*, 3d Dist. Shelby No. 17-17-10, 2018-Ohio-917, ¶ 11, citing R.C. 1335.04 and 1335.05.

{¶ 88} Gomez does not contend that this alleged oral agreement was not one "concerning an interest in real property." We find that the alleged agreement is one concerning an interest in real property. *See FirstMerit Bank, N.A. v. Inks*, 138 Ohio St.3d 384, 2014-Ohio-789, 7 N.E.3d 1150, ¶ 25 ("[T]he alleged oral agreement between [mortgagor] and FirstMerit does pertain to an interest in land, because it involves the terms upon which FirstMerit allegedly agreed to release the mortgage. As such, even if it is characterized as a settlement agreement, it falls within R.C. 1335.05.").

{¶ 89} Gomez instead argues that the statute of frauds does not bar enforcement of the alleged oral agreement because Ma instituted this suit, not him. But it is "well-settled" that "'a verbal contract within the condemnation of the statute of frauds cannot be enforced in any way, either directly or indirectly, and cannot be made either the ground of a demand *or the ground of a defense.*'" (Emphasis added.) *FirstMerit Bank, N.A. v. Inks*, 138 Ohio St.3d 384, 2014-Ohio-789, 7 N.E.3d

1150, ¶ 20, quoting *McGinnis v. Fernandes*, 126 Ill. 228, 232, 19 N.E. 44 (1888). Thus, the statute of frauds is implicated in this case.

{¶ 90} Nevertheless, Gomez argues that the statute of frauds does not prohibit enforcement of the alleged oral agreement under the doctrine of part performance, because of promissory estoppel or because the contract was orally modified.

{¶ 91} "Partial performance sufficient to remove a contract from the operation of the statute of frauds 'must consist of unequivocal acts by the party relying upon the agreement, which are exclusively referable to the agreement and which have changed his position to his detriment and make it impossible or impractical to place the parties *in statu quo*.'" (Emphasis sic.) *U.S. Bank v. Stewart*, 7th Dist. Columbiana No. 12 CO 56, 2015-Ohio-5469, ¶ 27, quoting *Delfino v. Paul Davies Chevrolet, Inc.*, 2 Ohio St.2d 282, 287, 209 N.E.2d 194 (1965).

> [A]cts which do not unmistakably point to a contract existing between the parties, or which can be reasonably accounted for in some other manner than as having been done in pursuance of a contract, do not constitute a part performance sufficient in any case to take it out of the operation of the statute, even though a verbal agreement has actually been made between the parties.

*Hughes v. Oberholtzer*, 162 Ohio St. 330, 339–340, 123 N.E.2d 393 (1954).

{¶ 92} A party seeking to establish promissory estoppel must prove: (1) a clear, unambiguous promise, (2) reliance on the promise by the person to whom the promise is made, (3) reasonable and foreseeable reliance on that promise and (4)

injury that results from that reliance. *Zindroski v. Parma City School Bd. of Edn.*, 8th Dist. Cuyahoga No. 93583, 2010-Ohio-3188, ¶ 62.

{¶ 93} Finally, even contracts that are required by the statute of frauds to be in writing can be modified orally "when the parties to the written agreement act upon the terms of the oral agreement." *Third Fed. S. & L. Assn. of Cleveland v. Formanik*, 8th Dist. Cuyahoga Nos. 100562 and 100810, 2014-Ohio-3234, ¶ 13, citing *200 W. Apts. v. Foreman*, 8th Dist. Cuyahoga No. 66107, 1994 Ohio App. LEXIS 4081 (Sept. 15, 1994); *see also 3637 Green Rd. Co. v. Specialized Component Sales Co.*, 8th Dist. Cuyahoga No. 103599, 2016-Ohio-5324, ¶ 21–25, 30–35 (substantial, competent credible evidence supported the trial court's conclusion that commercial landlord waived lease's no-oral-modification and written waiver provisions by its subsequent course of conduct, resulting in an enforceable oral agreement to reduce the rent due under the lease, where the landlord's records showed that landlord "invoiced" monthly rent at reduced rate and tenant "paid" monthly rent at reduced rate leaving a zero balance due on the account).

{¶ 94} Gomez does not point to evidence establishing a genuine issue of material fact that there was partial performance on the alleged oral agreement, that promissory estoppel applies or that the parties orally modified the contract. His only support for these arguments is his allegation that the parties orally agreed that — despite the clear language of the payoff agreement to the contrary — he need not make any payments on the balance owed on the installment contract until some indeterminate future time when "the building code issues and demolition issues had

been resolved" and the fact that Ma did not make any written demands upon him for payment for several years before instituting this lawsuit.

{¶ 95} The first problem with Gomez's argument is that he has not shown a genuine issue that an oral agreement existed prior to the execution of the payoff agreement. While his unsworn written statement provides that the oral agreement occurred "[s]hortly after executing the Home Mortgage Payoff Agreement," the clarity of this timing contradicts Gomez's sworn deposition testimony, as discussed further above at paragraphs 34–35.

{¶ 96} We will not read an unsworn, self-serving statement made in response to a motion for summary judgment as creating a genuine issue of material fact when the statement contradicts sworn deposition testimony. Even if there had been an oral agreement reached prior to the execution of the payoff agreement, the statute of frauds would bar its execution.

{¶ 97} Gomez does not show how, if at all, he or Ma acted in a way that "unmistakably point[s] to a contract existing between the parties." *Delfino* at 287. It does not seem that Ma ever sent Gomez invoices before the alleged oral agreement, such that there would have arguably been a change in the parties' course of dealing after the oral agreement was supposedly reached. Moreover, Ma states that he tried calling Gomez repeatedly about the property, which Gomez does not specifically deny. Gomez also does not show how, if at all, he detrimentally relied on the alleged oral agreement.

{¶ 98} Defendants' third argument similarly fails. Gomez argues that the trial court could not have granted summary judgment to Ma without considering "repayment, set-off, credit, or reimbursement or other contractual or equitable relief to the Appellants." Gomez does not argue what setoff, credit or reimbursement to which he believes he is entitled. But because Gomez did not file any counterclaims against Ma — for breach of contract or unjust enrichment, for example — and Ma dismissed his claims for monetary damages, the trial court was left solely to decide whether Gomez's interest in the land contract should be forfeited. Under the facts and circumstances of this case, we find that the trial court was permitted to grant summary judgment on that issue without consideration of setoff, credit or reimbursement.

{¶ 99} It was the Defendants' burden to show a genuine issue of material fact regarding Ma's claim for forfeiture of the land installment contract as a result of a breach of that contract. Considering the evidence in a light most favorable to the Defendants, they did not meet that burden. Ma was thus entitled to judgment as a matter of law.

{¶ 100} We, therefore, overrule Defendants' first assignment of error.

{¶ 101} Before concluding, we address one final point raised by the dissent, namely that the trial court granted Ma a "windfall." *See below* at ¶ 103. Gomez testified that he paid over $25,000 in attorney fees in actions filed by the city of Lakewood regarding the property and "expended substantial additional funds" bringing the property up to code; he also testified that he paid the water and sewer

bills for the property. He testified that he paid $6,000 upgrading the exterior power for the property and suggested that he improved the roof and driveway. But calling this summary judgment a "windfall" for Ma is speculative in light of the record here. There was no evidence presented about the property's current condition or current market value. Gomez admitted that the property "still has issues with the Building Department." There was no evidence presented about the fair rental value of the property over the years Gomez possessed the property without making payments to Ma. There was no evidence presented about rents Gomez collected for the property over the years; Defendants testified that there were tenants at the property for a period of time. Ma paid the property taxes on the parcel for years after Gomez stopped paying them. Without more information, it is impossible to conclude which party (if any) received a "windfall" in this unique situation.

## III. Conclusion

{¶ 102} Having overruled Defendant's assignments of error for the reasons stated above, we affirm.

It is ordered that the appellee recover from the appellants the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EILEEN A. GALLAGHER, JUDGE

ANITA LASTER MAYS, A.J., CONCURS;
SEAN C. GALLAGHER, P.J., DISSENTS (WITH SEPARATE OPINION)

SEAN C. GALLAGHER, P.J., DISSENTING WITH SEPARATE DISSENTING OPINION:

{¶ 103} I respectfully dissent. Ma received a windfall, retaking ownership and possession of a property that was maintained and possessed by Gomez and owned by Taylor for close to a decade. Neither party is entitled to the property free and clear at the expense of the other in this rather unique situation.

{¶ 104} The complaint in this action involved two claims, both related to the restitution of Ma's ownership of the residential property that he transferred to Taylor in 2013. The sole issue before this court is whether summary judgment was warranted on Ma's breach of contract stemming from the alleged breach of the home mortgage payoff agreement and fraud claims pertaining to his transferring the title of the disputed property to Taylor in 2013. The trial court granted the motion for summary judgment on the breach-of-contract and fraud claims, but left the damages, including any "set-offs [Gomez] may be entitled to" to be resolved at a

subsequent hearing. That hearing never occurred. Before the hearing could be conducted, Ma "withdrew all damages claims he might have in this matter."[10]

{¶ 105} It was only after Ma "withdrew" all claims for damages that the trial court issued an order that restored Ma's ownership of the property by deeming the 2013 transfer null and void and declared the judgment to be "final," without conducting a damages hearing on any potential setoff the court previously recognized as an issue in need of resolution or providing notice to Gomez of any intent to forego such a hearing.[11]

{¶ 106} Before addressing the merits of the arguments presented, the mootness issue needs to be put to rest. The motion to dismiss this appeal, filed several months after the close of the briefing schedule, has been denied. *See* Journal Entry dated February 1, 2023. Despite this, the majority reconsiders that decision and now deems any issues pertaining to the trial court's decision to nullify the 2013 transfer moot based on Ma's recording of the trial court's decision. Ma's entire

---

[10] Breach-of-contract and fraud claims require a plaintiff to demonstrate damages in order for the claims to be substantiated. *Corsaro v. ARC Westlake Village, Inc.*, 8th Dist. Cuyahoga No. 84858, 2005-Ohio-1982, ¶ 20, citing *Am. Sales, Inc. v. Boffo*, 71 Ohio App.3d 168, 175, 593 N.E.2d 316 (2d Dist.1991) (breach of contract requires proof of actual damages); *Burr v. Bd. of Cty. Commrs. of Stark Cty.*, 23 Ohio St.3d 69, 73, 491 N.E.2d 1101 (1986) (fraud requires proof of a resulting injury).

[11] There is no provision under the Civil Rules that permits a party to withdraw all claims for damages that are a prerequisite to the contract and tort claims for which summary judgment was partially granted. In general terms, the withdrawing of the damages is tantamount to dismissal of the claims since there is no relief that can be granted at that point in time. In light of the fact that the trial court restored Ma's ownership without conducting the damages hearing, this observation does not impact the finality of the judgment underlying this appeal.

argument is that the "judgment" was "voluntarily satisfied" because he recorded the trial court's order nullifying the 2013 transfer before Gomez and Taylor sought the stay of execution that was denied by the trial court.

{¶ 107} The three paragraphs of cursory discussion presented by Ma on the mootness issue was rightfully denied, but even if it is the majority's intent to reconsider the merits of the motion, our analysis and discussion should be limited to the arguments as presented. Tellingly, the majority bases its decision on its own extensive and well-researched analysis, straying far beyond the extremely limited argument presented for our review. *But see* Maj. Op. at ¶ 60 (refusing to depart from the majority's reasoning because Gomez and Taylor did not respond to the motion to dismiss). I would limit the analysis to Ma's arguments, which solely hinges on the effectiveness of a stay of execution.

{¶ 108} Any stay of execution would have been futile in this particular case. Recording a land transfer does not effectuate or validate the land transfer itself, it merely memorializes it. *Deutsche Bank Natl. Trust Co. v. Hill*, 5th Dist. Perry No. 14 CA 00021, 2015-Ohio-1575, ¶ 29. According to the unambiguous language of the judgment at issue, the judgment nullifying the Taylor's 2020 recording of the quitclaim deed, the court's decision was "effective as of the recording date of the prior instrument number" that vested title to Taylor. In other words, by its own terms, the judgment was effective immediately; the 2013 transfer was null and void from the date of transfer. Recording that judgment simply put third parties on notice of the status change in the titled owner. There was no execution to be had,

and no judgment to be satisfied; especially considering the fact that Ma effectively dismissed all pending claims after the partial summary judgment on both claims. Preventing Ma from recording the judgment would not divest him of ownership of the property bestowed upon him by the trial court.

{¶ 109} This case is unique in that the final judgment was not rendered upon any claims, all of which had been withdrawn by Ma by that point in time. The appellants had no recourse but to file this appeal, which Ma tacitly recognized since his motion to dismiss was not filed until several months into the appellate proceedings. Since the panel already denied that motion, there is no need to address those concerns any further.

{¶ 110} In the complaint, Ma claims that Gomez breached the installment purchase land contract ("installment contract") and the home mortgage payoff agreement ("purchase agreement") entered between himself and Gomez in 2013. The purchase agreement does not contemplate the continuation of the installment contract, nor would any breach of the installment contract entitle Ma to restitution or forfeiture through R.C. Chapter 5313. Those statutory sections are not applicable since the installment contract was in effect for longer than five years. R.C. 5313.08 (restitution and forfeiture are only available as remedies if the land installment contract has been "in effect" for less than five years). Ma's relief lay elsewhere.

{¶ 111} The majority's conclusion, that R.C. 5313.08 permits forfeiture claims beyond five years following the effective date of the land installment contract as long as the vendee does not make payments amounting to 20 percent of the total

purchase prices, is rewriting R.C. 5313.08. According to the majority, R.C. 5313.07 and 5313.08 must be read together to mean that forfeiture may occur after a land installment contract was in effect as long as the conditions of R.C. 5313.07 are not met. In other words, R.C. 5313.08 is meaningless; forfeiture is a remedy whenever foreclosure is not required under R.C. 5313.07. In this regard, the majority is substituting the unambiguous term "if the contract has been in effect for less than five years" under R.C. 5313.08 to mean "if the vendee of the land installment contract has paid in accordance with the contract for less than five years" as used in R.C. 5313.07. "In effect" is defined as "in operation" or "in force." *See, e.g., Hocking Valley Community Hosp. v. Community Health Plan of Ohio*, 4th Dist. Hocking No. 02CA28, 2003-Ohio-4243, ¶ 16 (if a contract is not executed but the parties act "as if the contract [is] in effect," performance can be a substitute for the writing). If the lack of payments somehow rendered the contract inoperable or not enforceable, as opposed to merely being a breach of an otherwise enforceable contract, then there would never be a breach of contract that could ever occur since the failure to make payments renders the contract inoperable or unenforceable. The majority's conclusion will have ramifications beyond this case. It is for this reason that statutes are to be applied as written.

{¶ 112} If the legislature had intended the majority's result, it would have used the same language in both sections. As it stands, forfeiture is not a statutorily authorized remedy in this case under the unambiguous language of R.C. 5313.08. Instead, under the unambiguous language of R.C. 5313.08 the legislature set a

deadline within which a vendor must seek forfeiture and restitution.  That deadline is not limited to situations in which a vendee has paid for five years or has paid an amount equal or greater to 20 percent of the purchase price.  Unless "the contract has been in effect for less than five years," there is no authority under R.C. 5313.08 to institute an action for forfeiture and restitution.

{¶ 113} If the contract has been in effect for less than five years (R.C. 5313.08), a vendor may seek restitution (forcible entry and detainer) and forfeiture (of the land installment contract) unless the vendee has made payments for five years or in an amount equal or greater than 20 percent of the purchase price, in which case foreclosure is required  (R.C. 5313.07).  Reading statutory provisions together means applying the unambiguous language of each section, not redefining words of common usage to create remedies not provided by the legislature.  The majority's conclusion provides windfalls to vendors who sit on their statutory rights only to evict the vendee and force that vendee to forfeit any equitable rights in the property after five years.  The legislature unambiguously set a five-year deadline for forfeiture actions under R.C. 5313.08, and no amount of judicial interpretation should be used to alter that unequivocal conclusion.

{¶ 114} As a result of Gomez's foregoing observation, it must be recognized that this is a breach-of-contract action solely based on general principles of contract.  After operating under the installment contract for several years, the parties' disagreement relating to the failure to abide by the notice requirements under R.C. 5313.02(A) resulted in negotiation of the purchase agreement involving a lump-sum

payment in exchange for title to property in Taylor's name. Ma transferred title to Taylor, but the payment became delayed. According to Ma, the transfer was premature because Gomez did not timely submit the payment and breached the agreement thereby, but Gomez claims they orally agreed to defer payment until the issues with the city were resolved. That delay necessarily impacts the damages for any breach.

{¶ 115} With respect to the breach of the purchase agreement, there are genuine issues of material fact precluding the granting of summary judgment under Civ.R. 56. Gomez submitted an affidavit under Civ.R. 56(E), and that affidavit goes well beyond bare legal conclusions or allegations that fall under the prohibition against self-serving affidavits. Gomez's affidavit presents evidence demonstrating that Ma did not prove a breach-of-contract claim as a matter of law, also demonstrated by the fact that Ma "withdrew" any claims for actual damages that are a necessary requisite of any breach-of-contract action. *Corsaro,* 8th Dist. Cuyahoga No. 84858, 2005-Ohio-1982, at ¶ 20. And importantly, Gomez's affidavit setting forth evidence favorable to his argument is no more self-serving than Ma's affidavit that was unequivocally accepted by the trial court and the majority herein. The weight or veracity of Gomez's evidence is not properly considered under Civ.R. 56.

{¶ 116} In his affidavit, Gomez avers that Ma and his predecessor in interest failed to comply with the provisions of R.C. Chapter 5313, including the failure to abide by R.C. 5313.02, leading to the negotiation and execution of the purchase agreement. After executing the purchase agreement, Gomez claimed that he and

Ma orally agreed to defer the lump-sum payment until Gomez could resolve the dispute with the city. Ma's failure to pursue any action against Gomez for seven years following the 2013 agreement and his transferring of the title to Taylor, a third-party beneficiary of the purchase agreement, demonstrates: (1) that the purchase agreement controlled over the installment contract because the installment contract would have required Ma to hold title to the property until the loan was paid over time, and (2) that the course of performance, impacting Ma's potential waiver of any statute-of-frauds defense, suggests the existence of the oral modification Gomez claims to have been necessitated by the continuing actions of the city against the property. *See TLOA Acquisitions, L.L.C. v. Unknown Heirs*, 2021-Ohio-3678, 179 N.E.3d 246, ¶ 16 (8th Dist.), quoting *3637 Green Rd. Co. v. Specialized Component Sales Co.*, 2016-Ohio-5324, 69 N.E.3d 1083, ¶ 33 (8th Dist.), and *Crilow v. Wright*, 5th Dist. Holmes No. 10 CA 10, 2011-Ohio-159, ¶ 47 (statute of frauds may apply where it would be inequitable to permit the doctrine to operate and the acts of the parties are sufficient to provide a safeguard in lieu of the writing requirement).

{¶ 117} Although Gomez's affidavit was unsworn, it is well settled that such affidavits will support a judgment if the trial court considers them and no objection is made. *Brown v. Ohio Cas. Ins. Co.*, 63 Ohio App.2d 87, 90, 409 N.E.2d 253 (8th Dist.1978), quoting *United States v. Dibble*, 429 F.2d 598, 603 (9th Cir.1970) (Wright, J., concurring); *see also Wolk v. Paino*, 8th Dist. Cuyahoga No. 93095, 2010-Ohio-1755, ¶ 28 ("While a court, in its discretion, may consider other documents than those specified in Civ.R. 56(C) if there is no objection, there is no

requirement that a court do so."). Ma failed to object to the trial court's consideration of these unsworn statements and as the majority recognizes, *see* Maj. Op. ¶ 4, fn. 1, neither affidavit from Ma or Gomez were properly submitted. Despite this conclusion, the majority rejects Gomez's evidence, which largely tracked his deposition testimony that the parties agreed to delay payments pending the city's actions against the property, while fully accepting Ma's. Maj. Op. at ¶ 96.

{¶ 118} And, in addition to all this, Ma presented no evidence of damages in his motion for summary judgment, much less that he was entitled to receive the property free and clear of all expenses paid and any equity built by Gomez for the decade Gomez retained possession of the property. As the trial court initially recognized, the issue of damages required, at the least, a hearing (if not a trial).

{¶ 119} With respect to the fraud claim against Taylor, the court erred in granting judgment in favor of Ma against Taylor. Ma was on notice of his transferring the title of the property to Taylor in 2013. He admitted he undertook the act of his own volition. His defense was limited to a self-serving statement in his affidavit that he did so by mistake due to personal matters. Taylor's recording of the title is of little consequence to the fraud claim. Under R.C. 5301.25, "[u]ntil so recorded or filed for record, [all deeds] are fraudulent [only] *insofar as they relate to a subsequent bona fide purchaser having, at the time of purchase, no knowledge of the existence of that former deed, land contract, or instrument.*" R.C. 5301.25(A). Thus, the recording of the transferred title goes to fair notice to subsequent

purchasers, not the validity of the transaction itself. *See Hill*, 5th Dist. Perry No. 14 CA 00021, 2015-Ohio-1575, ¶ 29.

{¶ 120} Ma cannot claim that he first discovered the alleged fraudulent conduct, Taylor's erroneous retention of the title to the property starting in 2013, after Taylor belatedly recorded the transfer of title that he initiated without anything other than his admission of a mistake. R.C. 2305.09(C). Ma voluntarily, albeit prematurely, transferred title of his property to Taylor in 2013 before Gomez upheld his end of the bargain. In the seven ensuing years, Ma took no action to rectify the situation or pursue the lump-sum payment from Gomez. Even if Taylor's retention of the title somehow constituted fraud, that conduct originated in 2013 when Ma transferred the title to Taylor and she retained that title despite Gomez's failure to submit the lump-sum payment. The filing of the complaint in 2020 was well beyond the statute of limitations for a fraud claim that accrued in 2013, and therefore, it cannot be the basis of awarding Ma title to the property.

{¶ 121} There are genuine issues of material fact precluding the granting of summary judgment upon the breach-of-contract allegations, and accordingly, the trial court's order granting Ma title to the property should be vacated and this matter remanded for further proceedings.